756 So.2d 377 (1999)
Barbara C. CLEMENT
v.
DYNASTY TRANSPORTATION and Empire Fire & Marine Insurance Company.
No. 98 CA 2377.
Court of Appeal of Louisiana, First Circuit.
December 28, 1999.
*378 Michelle Mayne Davis, Houma, for Plaintiff-Appellant.
Dale P. Martin, Morgan City, for Defendants-Appellees.
Before: SHORTESS, PARRO, and KUHN, JJ.
SHORTESS, J.
On November 25, 1996, a pickup truck driven by Levy Clement left the roadway of Louisiana Highway 316 in Gray, Terrebonne Parish, when Clement was blinded by the headlights of another vehicle. His wife, Barbara C. Clement (plaintiff), a passenger in the pickup, was seriously injured in the accident. She sued Clement's employer, Dynasty Transportation, and its liability insurer, Empire Fire & Marine Insurance Company (defendants), alleging the accident was caused by Clement's negligence. Defendants responded by alleging that plaintiff was also an employee of Dynasty, that she was in the course and scope of her employment at the time of the accident, and that her sole remedy was workers' compensation. After a jury trial, judgment was rendered in defendants' favor, dismissing plaintiff's suit. Plaintiff appeals.
In May 1996 an employee of Dynasty approached Clement about becoming a driver for Dynasty. Clement responded that he would do so only if plaintiff could ride with him. He was told she could do so only if she became a Dynasty employee and qualified as a driver. Plaintiff was a school bus driver and already had a commercial driver's license, so after a physical *379 examination and drug test, she qualified as a Dynasty driver.
Initially Clement drove a two-ton truck, and plaintiff rode with him during summers and school holidays. She helped drive on long trips and assisted with fastening the straps on the loads. After completing a trip, Dynasty drivers turned in a waybill and were paid a percentage of the revenue from the load. Since all their income went into a joint bank account, the Clements usually turned in the waybill in Clement's name, even if plaintiff helped drive.
Dynasty required its drivers to keep daily logs. The United States Department of Transportation (DOT) checks the logs of drivers to ensure they are getting sufficient rest between trips. Drivers record when they are on and off duty, their pre- and post-trip inspections, and when they are on duty but not driving. Both Clement and plaintiff kept logs, beginning with the two-ton truck.
In September 1996 Clement bought a half-ton pickup truck, which he leased to and drove for Dynasty. Plaintiff testified that DOT does not require logs for pickup trucks, but because they had begun keeping logs, Dynasty required them to continue the logs. According to the Clements, the logs they kept for the pickup were works of fiction. Plaintiff testified that the logs had to be turned in weekly, and every Sunday she filled out both logs, allocating some driving time to each of them. She described the log entries as "made up."
According to plaintiff, once they bought the pickup, she never drove, but the logs showed her driving the pickup regularly. She stated that she indicated in the logs that she was driving because she felt Dynasty expected her to drive, and she believed each of her logs had to show some driving time. Janice T. Martin, the Clements' daughter, is also a driver for Dynasty. She testified that falsification of logs is common.
The night before the accident, the Dynasty dispatcher called Clement and assigned him to drive to Berwick, forty miles from his home in Houma. School was out for the Thanksgiving holiday, but plaintiff did not intend to ride with Clement on this short trip. When Clement arose at 5:00 a.m. to get ready for the trip, he woke plaintiff. She decided to accompany him on the trip.
About 5:20 a.m. on a dark, rainy morning, Clement was momentarily blinded by the bright lights of another vehicle while traversing a curve. He hit his brakes, skidded seventy-five feet, flew over a ditch, and landed in a field. Plaintiff was seriously injured in the accident and was taken to Terrebonne General Hospital by ambulance.
Plaintiff was in the intensive care unit at Terrebonne General for a week following the accident. While she was hospitalized, Martin, her daughter, prepared plaintiffs log and took it to her in the hospital to sign. The log indicates plaintiff was on duty but not driving. Martin testified she knew plaintiff just went along for the ride, but since she was in the vehicle, she had to show her status as on duty. Plaintiff signed the log as co-driver, but she testified she did not remember signing the log.
Clement testified he did not need plaintiff as a co-driver on the day of the accident, and the dispatcher had not requested he use a co-driver. He stated his wife had never driven the pickup for Dynasty, she had never been paid for driving the pickup, and she did not even have a payroll number for that truck. According to Clement, plaintiff was not on duty at the time of the accident. He stated that every entry in the log that showed her driving or performing a pre-trip inspection was false. Plaintiff testified she was not working at the time of the accident, but she admitted she was qualified to take over driving the pickup if needed.
The trial judge was uncertain whether the issue of course and scope was a legal *380 question for him to decide or a factual issue to be determined by the jury. To solve this dilemma, he allowed a jury interrogatory on course and scope and independently decided the issue himself. Both the judge and jury found plaintiff was in the course and scope of her employment with Dynasty at the time of the accident. The trial judge gave the following oral reasons for that finding:
Mr. Clement is up in his age. The Court feels it's reasonable for him to want someone to be with him and I think one of the reasons he wanted someone to be with him, is he loves his wife and enjoys her companionship, but he was aware of, and Mrs. Clement was aware of, that that could not happen if she was not an employee of Dynasty and was not certified to drive the vehicles, so they went along with it. At no time, by both their testimony, did they ever testify or tell Dynasty that Mrs. Clement wasn't driving on some of these trips. In fact, all of their logs, as testified by Mrs. Clement, indicates that they submitted to Dynasty that she was driving on many of these trips, when in fact she was not.
On this particular day of the accident,... Mr. Clement had been dispatched.... The vehicle was going on a trip for the business purpose of Dynasty. Now, for some reason Mrs. Clement decided she wanted to take a ride that morning. But everything they had submitted to Dynasty, in particular the logs, demonstrated to Dynasty that she was also participating as co-driver. Even accepting her word that she didn't drive the [pickup], she had driven some of the other vehicles before and they were representing on a very regular basis to Dynasty that she was participating in the driving. In fact, she testified that there would be some benefit to Dynasty in case Mr. Clement got ill on this particular day.
The Court feels that there's no question the trip of this truck was in the furtherance of the business of Dynasty, and that because of the logs submitted and the past pattern of putting in there that she was driving, that Dynasty had a reasonable expectation or anticipation that she was going along to assist her husband in driving these vehicles, and because of that she's within the course and scope of her employment and the Court finds that her sole remedy is through Louisiana State Work[ers'] Compensation against Dynasty.
The issue before us is whether plaintiff was in the course and scope of her employment at the time of the accident, and thus, covered by the Louisiana Workers' Compensation Act. If so, compensation is plaintiff's exclusive remedy, and an action in tort is barred.[1] The Act provides for compensation if an employee sustains personal injury as a result of an accident arising out of and in the course of employment.[2]
An accident occurs in the course of employment when the employee is injured while actively engaged in the performance of his duties during working hours, either on the employer's premises or at other places where employment activities take the employee.[3] Plaintiff was on call twenty-four hours a day, seven days a week. Her employment activities took place mainly inside the truck. She was thus in the course of her employment if she was actively engaged in the performance of her duties at the time of the accident.
What were plaintiff's duties for Dynasty? She was qualified as a driver, having passed the physical, the drug screen, and the commercial driver's license test. When they drove the two-ton truck, she *381 helped her husband drive on long runs and helped strap down the loads. She testified she never drove the pickup, but she was ready and capable of taking the wheel at any time. If her seventy-one-year-old husband had become ill or tired, she could have taken over. Dynasty did not allow joy riders in its vehicles. Its company policy, of which the Clements were well aware, was that only qualified Dynasty drivers could ride in its trucks. And in keeping with Dynasty's policy, every time plaintiff climbed in the cab of the truck, she was actively engaged in performing her duties as a co-driver.
An action arises out of employment if the risk for which the injury resulted was greater for the employee than for a person not engaged in the employment.[4] This inquiry focuses on whether the character or origin of the risk giving rise to the injury was employment-related.[5] An accident arises out of employment if the conditions or obligations of the employment caused the employee in the course of employment to be at the place of the accident at the time the accident occurred.[6]
Obviously, the risk of being involved in a motor vehicle accident is much greater for a truck driver than the ordinary citizen because of the amount of time the truck driver spends in a vehicle. And in this case, were it not for plaintiffs employment with Dynasty, she would never have been in the vehicle at the time of the accident, as Dynasty did not allow non-employees in its vehicles. Therefore, it is clear plaintiff's injury arose from her employment.
In their brief, defendants cite several cases listing factors to determine whether an employee was in the course and scope of employment for purposes of vicarious liability under Louisiana Civil Code article 2320. The jurisprudence defendants cite is inapplicable in this case. We are not asked to determine whether Dynasty could be liable for plaintiff's acts; the issue is whether plaintiffs injury arose out of and in the course of her employment, such that it is covered by workers' compensation.
The trial court focused on Dynasty's reasonable expectations based on the logs. Plaintiff contends this is error because, according to plaintiff and Clement, Dynasty never reviewed the logs. Whether Dynasty relied on the logs or not, it is clear that, applying the factors set forth by our supreme court, plaintiffs injury arose from her employment and was sustained in the course of her employment. The judgment of the trial court is affirmed, at plaintiff's costs.
AFFIRMED.
NOTES
[1] La. R.S. 23:1032.
[2] La. R.S. 23:1031.
[3] Mundy v. Department of Health & Human Resources, 593 So.2d 346, 349 (La.1992).
[4] Id.
[5] Williams v. Regional Transit Authority, 546 So.2d 150, 159 (La.1989).
[6] Mundy, 593 So.2d at 349.