J^GONZALES, J.
Rudy Crochet filed a disputed claim for compensation against his employer, Ronald Adams Contractor, Inc., on January 14, 2000. Mr. Crochet asserted that on December 5, 1998, he was attempting to install a new filter in a backhoe when he slipped and fell, striking his right knee on the backhoe and injuring it. He asserted that he sustained a loss in income, should be receiving supplemental earnings benefits, and that he would require future medical treatment consisting of a total knee replacement, which would result in temporary total disability. Ronald Adams Contractor, Inc. answered the petition, denying that Mr. Crochet sustained an injury-on the date set forth in the petition, asserting that Mr. Crochet had received some compensation, denying that Mr. Crochet had a loss of earning capacity, and denying that he was temporarily or permanently disabled.
After a hearing on the merits, the workers’ compensation judge determined that, although Mr. Crochet sustained an injury within the course and scope of his employment, he failed to prove an inability to earn 90% of his wages as a result of the accident; thus, he was not entitled to supplemental earnings benefits.
Mr. Crochet is appealing that judgment and makes the following assignments of error:
1. The trial court committed reversible error in finding that appellant was not entitled to supplemental earnings benefits due to appellant’s inability to prove a reduction in appellant’s wage earning ability.
2. The trial court committed reversible error in finding that appellant was performing heavier manual labor subsequent to his accident experiencing no difficulties and, therefore, did not sustain any loss of earning capacity.
3. The trial court committed reversible error as a matter of law in incorrectly concluding that actual post-injury earnings are not relevant for qualification for supplemental earnings benefits and that appellant failed to bear his burden of proof of loss of wage earning capacity.
4. The workers’ compensation judge abused his discretion in holding that appellant was not entitled to supplemental earnings benefits by totally disregarding all medical evidence.
5. The trial court committed reversible error as a matter of law in failing to award penalties and attorney fees for defendants/appellees’ failure to pay supplemental earnings benefits.
^Louisiana Revised Statute 23:1221(3) provides in pertinent part:
(a) For injury resulting in the employee’s inability to earn wages equal to ninety percent or more of wages at time of injury, supplemental earnings benefits *996 equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed by multiplying his “wages” by fifty-two and then dividing the quotient by twelve.
(b) For purposes of Subparagraph (3)(a), of this Paragraph, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sums actually received by the employee, including, but not limited to, earnings from odd-lot employment, sheltered employment, and employment while working in any pain.
(c)(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee’s or employer’s community or reasonable geographic region.
(ii) For purposes of Subsubparagraph (i) of this Subparagraph, if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee cannot perform employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment.
THE STANDARD OF REVIEW
The purpose of supplemental earnings benefits is to compensate the injured employee for the wage-earning capacity lost as a result of an accident. Vicknair v. The Nature Conservancy, 97-2229 (La.App. 1 Cir. 6/29/98), 718 So.2d 476, 478, writ denied, 98-2495 (La.11/25/98), 729 So.2d 567.
The claimant in a supplemental earnings benefits case must prove by a preponderance of the evidence that his work-related injury rendered him unable to earnl490% of his pre-injury wages. Because this is a question of fact the appellate court may not set aside the hearing officer’s findings in this regard absent manifest error or unless the findings are clearly wrong. Where there are two permissible views of the evidence, the factfin-der’s choice between them cannot be manifestly erroneous or clearly wrong. Hurst v. Baker Sand Control, 94-2463 (La.App. 1 Cir. 10/6/95), 671 So.2d 408, 412.
ASSIGNMENTS OF ERROR NO. 1, 2, 3 AND 4
Mr. Crochet argues that his actual earnings subsequent to the accident are the sole determination of whether he is entitled to supplemental earnings benefits. However, Ronald Adams Contractor, Inc. *997 argues that earning capacity is the basis of the supplemental earnings benefits statute and that Mr. Crochet demonstrated his earning capacity by continuing to work as a serviceman or light mechanic without any performance problems earning the same rate of pay from December 5, 1998, through July 27, 1999, as before the accident.
The record shows that after the accident, Mr. Crochet performed light duty work for a brief period, then continued to work at the same job he had before the accident, as a serviceman for Ronald Adams Contractor, Inc. performing light to medium duty' work through July 27, 1999. He earned the same rate of pay before and after" the accident, $11.50 per hour. Mr. Crochet worked overtime after the accident as he had before the accident, and the hours he worked each week varied after the accident as they had before the accident. Wayne Brackeen Sr., Mr. Crochet’s supervisor at Ronald Adams Contractor, Inc., testified that he observed no problems with Mr. Crochet’s job performance after the accident and further testified that on July 27, 1999, Mr. Crochet voluntarily quit because he had found another job.
The Tesco employment records indicate that Mr. Crochet took a drug screen test and had a physical examination on July 28, 1999, the day after he left Ronald Adams Contractor, Inc. The physical examination report classified Mr. Crochet as able to work at a heavy-duty capacity.
l.qA day or two after that, Mr. Crochet began working for Tesco. A representative of Tesco, Randy LeBeouf, testified that- Mr. Crochet worked at Tesco as a mechanic in the medium to light duty work capacity. Mr. Lebeouf testified that he observed no problems in Mr. Crochet’s work performance. Mr. Crochet continued to work at Tesco, then later went to Brown & Root performing mechanic work in the medium to heavy duty work capacity from the week of August 4, 1999, through the date of trial. Mr. Crochet earned $12.00 per hour from July 30, 1999, through November 8, 2000. On November 8, 2000, he received a pay increase to $13.00 per hour. Mr. Crochet worked overtime at Tesco between July 30, 1999, and October 5, 2000, although he did not receive overtime pay at Tesco but rather was paid his regular hourly rate for his overtime work.
Mr. Crochet’s W-2 statements in the record show that he earned $6,981.03 in 1996, $20,561.29 in 1997, $15,905.10 in 1998, and $11,433.07 in 1999. Although Mr. Crochet earned less in 1999, the year after the accident, than he had the year before, 1998, he earned more in 1999 than he had in 1996.
After a thorough review of the record, we cannot say that the workers’ compensation judge committed manifest error or was clearly wrong in finding that Mr. Crochet failed to meet the burden of proving that he was unable to,earn 90% of his pre-accident wages as a result óf a work-related accident on December 5, 1998. These assignments of error have no merit.
ASSIGNMENT OF ERROR NO. 5
Having found that the trial court did not err in finding Mr! Crochet was not entitled to supplemental earnings benefits, we further find that the trial court did not err in finding that Mr. Crochet was not entitled to penalties and attorney fees for Ronald Adams Contractor, Inc.’s failure to pay supplemental earnings benefits. This assignment of error has no merit.
Therefore, for the foregoing reasons, the trial < court judgment is AFFIRMED. *998 Costs of this appeal are assessed against Mr. Crochet.