844 So.2d 80 (2003)
Norman L. TYNES
v.
GAYLORD CONTAINER CORPORATION.
No. 2002 CA 0519.
Court of Appeal of Louisiana, First Circuit.
February 14, 2003.
Writ Denied May 9, 2003.
*82 Delbert Talley, Covington, for Plaintiff-Appellee Norman L. Tynes.
Kirk Landry, Aaron J. Chaisson, Baton Rouge, for Defendant-Appellant Gaylord Container Corporation.
Before: FITZSIMMONS, GUIDRY, and PETTIGREW, JJ.
PETTIGREW, J.
In this case, defendant appeals a judgment of the Office of Workers' Compensation awarding claimant temporary total disability benefits, supplemental earnings benefits, penalties, and attorney fees in connection with a work-related accident. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
On January 30, 2001, claimant, Norman L. Tynes, filed a disputed claim for compensation *83 with Office of Workers' Compensation averring entitlement to workers' compensation benefits. Mr. Tynes alleged that on November 2, 1998, while in the course and scope of his employment at Gaylord Container Corporation ("Gaylord"), he injured himself while attempting to change the sprinkler head behind one of the paper machines. Mr. Tynes, who was 53 years old at the time of this incident, began working at Gaylord's Bogalusa Paper Mill in June 1967, and was working as an operating mechanic when he was injured.
According to Mr. Tynes, immediately following the incident on November 2, 1998, he was unable to "straighten up" and thought he had just pulled a muscle. He continued to work for a few days following this incident, until November 7, 1998, when he reported to his supervisor that he could not work because he was "still hurting." At that time, Mr. Tynes' supervisor filled out an Employer's Report of Occupational Injury or Disease and sent him to the emergency room at Bogalusa Medical Center. X-rays at that time revealed two bulging discs, and Mr. Tynes was told that he should not return to work.
Thereafter, on November 11, 1998, Mr. Tynes began seeing Dr. James R. Gosey, Jr., an orthopedic surgeon who had previously treated Mr. Tynes for an arm injury. Dr. Gosey also advised Mr. Tynes to remain off of work and referred him to physical therapy. Mr. Tynes underwent an MRI in late 1998, which, according to Dr. Gosey, revealed that he had a "bad back." On January 13, 1999, Dr. Gosey noted as follows:
He's got a Grade I SPONDYLOLISTHESIS at L5. There is degenerative changes throughout the lumbar spine with bulging, degenerated discs. There is some mild neuroforaminal encroachment at L3-4 and at L4-5.... His normal job is mechanic type job. Looking at his MRI, I don't think he ought to be a mechanic anymore. I think that's over. His days of lifting, doing any significant work with his back are over.... [S]o as far as I'm concerned he is disabled from his job indefinitely.
In the "Attending Physicians Statement" completed by Dr. Gosey in March 1999, Dr. Gosey indicated that Mr. Tynes is "totally incapacitated" and that such incapacity is permanent. In fact, throughout Dr. Gosey's notes concerning Mr. Tynes' treatment, he continually referred to Mr. Tynes as "NOT FIT FOR DUTY." It was not until his deposition was taken on July 10, 2001, that Dr. Gosey implied that if there was a job that fell within the physical restrictions that he had outlined for Mr. Tynes, then he would release Mr. Tynes to return to work.
According to Mr. Tynes, since he last worked for Gaylord, he has not sought work anywhere else because he has not been discharged by Dr. Gosey to return to work. He did, however, attempt to raise cattle, but only made enough money to cover his expenses. Mr. Tynes also testified that he currently receives $1,448.00 in social security disability benefits and $791.63 in disability retirement benefits from Gaylord.
Immediately following the accident,[1] on November 2, 1998, Gaylord began paying *84 Mr. Tynes temporary total disability benefits ("TTDs"), later converted the benefits to supplemental earnings benefits ("SEBs"), and then terminated all benefits on November 11, 2000, alleging that Mr. Tynes had removed himself from the work force and was no longer entitled to benefits pursuant to La. R.S. 23:1221(3)(d)(iii). This action by Gaylord prompted the instant suit. Mr. Tynes' claim for compensation proceeded to hearing on October 10, 2001, at which time the workers' compensation judge heard testimony from Mr. Tynes, allowed the introduction of various documents into evidence, including the deposition and office notes from Dr. Gosey, and took the matter under advisement.
After hearing from Mr. Tynes at trial and considering the evidence in the record, the workers' compensation judge rendered judgment on November 19, 2001, awarding Mr. Tynes TTDs from November 7, 1998, the date of the accident,[2] through July 10, 2001, and SEBs from July 11, 2001, forward, not to exceed 520 weeks. Moreover, the judge concluded that Gaylord was arbitrary in its conversion of Mr. Tynes' benefits from TTDs to SEBs and set a hearing to determine the amount of attorney fees and penalties to be assessed for such action. Following a hearing on December 12, 2001, the workers' compensation judge rendered a judgment on December 26, 2001, in favor of Mr. Tynes, awarding $3,200.00 in attorney fees and $2,000.00 in penalties. It is from these judgments that Gaylord has appealed, assigning the following specifications of error:
I. The trial court committed legal error by shifting the burden of proof to the employer to prove the availability of a job within the employee's physical restrictions where the employee's treating physician indicates that the employee is physically capable of engaging in gainful employment, the employee has taken absolutely no steps to locate any form of employment and has voluntarily withdrawn himself from the labor market, resulting in his failure to satisfy his initial burden of proof.
II. The trial court committed legal and manifest error in holding that the proper date to convert the appellee's benefits from TTD to SEB was the date of his treating physician's deposition where no evidence was presented that a change in his condition occurred on that date, and the physician clearly testified that the appellee was capable of engaging in employment with restrictions for a 40 hour week and these restrictions were the same throughout the entire course of treatment.
III. The trial court committed manifest and legal error in awarding penalties and attorney's fees for improper conversion of Temporary Total Disability Benefits to Supplemental *85 Earnings Benefits where the medical evidence of the employee's treating physician clearly indicates that he was always capable of engaging in gainful employment.

STANDARD OF REVIEW
Factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. As an appellate court, we cannot set aside the factual findings of the workers' compensation judge unless we determine that there is no reasonable factual basis for the findings and the findings are clearly wrong (manifestly erroneous). Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Furthermore, when factual findings are based on the credibility of witnesses, the fact finder's decision to credit a witness's testimony must be given "great deference" by the appellate court. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). Thus, when there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, although the appellate court may feel that its own evaluations and inferences are as reasonable. Id.

SUPPLEMENTAL EARNINGS BENEFITS
In assignment of error number one, Gaylord contends that the workers' compensation judge improperly and prematurely shifted the burden of proof in awarding SEBs to Mr. Tynes. Citing La. R.S. 23:1221(3)(a) and Seal v. Gaylord Container Corporation, 97-0688 (La.12/2/97), 704 So.2d 1161, Gaylord asserts that under the clear wording of the statute and the unambiguous interpretation by the Louisiana Supreme Court, it did not have the obligation to engage in any vocational rehabilitation or related activities until Mr. Tynes met his initial burden of proving that he was unable to earn 90 percent or more of his pre-injury wage. Gaylord alleges that by not undertaking even the most basic of job searches to locate other employment, Mr. Tynes has failed to satisfy his initial burden of proof, and thus, the burden never shifted to Gaylord to perform a vocational evaluation, rehabilitation, or a functional capacity evaluation. Alternatively, Gaylord asserts that even if this court finds that Mr. Tynes has satisfied his initial burden of proving his entitlement to SEBs, any right to these benefits was properly terminated pursuant to La. R.S. 23:1221(3)(d)(iii) because Mr. Tynes chose to voluntarily remove himself from the work force. We find no merit to any of these arguments.
The purpose of supplemental earnings benefits is to compensate an injured employee for the wage-earning capacity lost as a result of a work-related accident. Crochet v. Ronald Adams Contractor, Inc., XXXX-XXXX, p. 3 (La.App. 1 Cir. 5/10/02), 818 So.2d 994, 996, writ denied, XXXX-XXXX (La.9/30/02), 825 So.2d 1197. Entitlement to SEBs is governed by La. R.S. 23:1221(3), which provides, in pertinent part, as follows:
(3) Supplemental earnings benefits.
(a) For injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent *86 of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed by multiplying his "wages" by fifty-two and then dividing the quotient by twelve.
Thus, in order to recover SEBs, a employee must first prove, by a preponderance of the evidence, that a work-related injury has resulted in his inability to earn 90 percent or more of his average pre-injury wage. Seal, 97-0688 at 8, 704 So.2d at 1166. "The analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that worker's compensation law is to be liberally construed in favor of coverage." Daigle v. Sherwin-Williams Company, 545 So.2d 1005, 1007 (La.1989).
Once the employee's burden is met, the burden shifts to the employer who, in order to defeat the employee's claim for SEBs or establish the claimant's earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region. Scott v. Lakeview Regional Medical Center, XXXX-XXXX, p. 4 (La.App. 1 Cir. 3/28/02), 818 So.2d 217, 221, writ denied, XXXX-XXXX (La.10/14/02), 826 So.2d 1127 citing Banks, 96-2840 at 9, 696 So.2d at 556). Actual job placement is not required. Seal, 97-0688 at 8, 704 So.2d at 1166. However, pursuant to La. R.S. 23:1226, when an employee suffers a work-related injury that is covered by the Louisiana Workers' Compensation Act and said injury precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services.
In determining whether a finding that an employee has met the initial burden of proving entitlement to SEBs is manifestly erroneous, a reviewing court must examine the record for all evidence that bears upon the employee's inability to earn 90 percent or more of his pre-injury wages. Seal, 97-0688 at p. 8, 704 So.2d at 1166. Factors that have been considered in determining whether a claimant can earn 90 percent of his pre-injury wage include the employee's age, education, job skills, and work history. See Seal, 97-0688 at 9-10, 704 So.2d at 1166-1167.
In the instant case, the evidence is such that Mr. Tynes' treating physician found him to be indefinitely disabled as a result of the November 2, 1997 accident. In fact, on April 13, 1999, Dr. Gosey noted that Mr. Tynes was "unable to return to [his job] on a permanent basis." Dr. Gosey's findings with regard to Mr. Tynes' ability to work were consistent throughout his treatment of Mr. Tynes. Dr. Gosey continually noted that Mr. Tynes was "NOT FIT FOR DUTY" as a result of the work-related injury he sustained. At the time of trial, Dr. Gosey had last seen Mr. Tynes on April 18, 2001. His office note from that visit reveals, in pertinent part, as follows:
Follow-up on his BACK. He's pretty much the same.... It's been going on for years.... We'll continue him NOT *87 FIT FOR DUTY. He is unable to do any type of work. He cannot work at a cash register. He cannot lift weights. He cannot do anything. He doesn't want any surgery at this time. He's getting by with a few medications and trying to deal with it over time. We'll see how he does.
It was not until his deposition was taken on July 10, 2001, that Dr. Gosey somewhat modified his opinion regarding Mr. Tynes' ability to work. Dr. Gosey maintained that the restrictions that he had placed on Mr. Tynes were "pretty tight restrictions" and had been the same throughout the course of his treatment of Mr. Tynes. The following hypothetical questions were posed to Dr. Gosey concerning whether Mr. Tynes would be able to work if there was a job available that fit within his physical restrictions:
Q. And if in fact there were jobs or work that he could do within the restrictions that you have described, he in fact wouldn't be totally disabled or totally unable to engage in any of that employment?
A. That's correct. If you could find him a job within the physical restrictions then I would release him to do that job.
. . . .
Q.... [F]rom a medical perspective from you as an orthopedic surgeon, would you think it would be beneficial for somebody in Mr. Tynes' circumstances to be engaged in employment or seeking employment; that sort of thing?
A. Well, in general, we want people to work if they can and we don't particularly like people sitting in the house doing nothing, but at his age with the type of job he had with workers' compensation figuring into the equation, it's pretty hard for me to say: You need to go find a job and get out of the house. Because the work he would be available for is pretty limited based on his physical restrictions, and I haven't told the man: Look, you need to go out and find a job. I'm not about to do that. If he wants to know what kind of work could he do or if they had a job description they wanted me to check off on, I would be more than happy to do that.
. . . .
Q. Doctor, is it fair to say that to the extent that work is available within the physical restrictions that you've described, that Mr. Tynes is not unable to engage in gainful employment?
A. Correct. If you have a job that fell within the physical restrictions outlined here, then I would release him to go to that job. I would say he's capable of doing that job.
Dr. Gosey further testified that Gaylord had never provided him with any job descriptions to sign off on for Mr. Tynes.
Mr. Tynes testified that he never sought any other employment after his retirement from Gaylord in June 1999, because he was never released by Dr. Gosey to return to work. Mr. Tynes indicated that had Dr. Gosey told him that he could do a certain type of work within his restrictions, he would have returned to work. However, Mr. Tynes stated that neither Gaylord nor its insurer ever suggested to him that there were jobs available to him at Gaylord that would fit within his limitations. Moreover, Gaylord never offered him any kind of vocational rehabilitation or training as mandated by La. R.S. 23:1226.
Based on our review of the evidence in the record, we are satisfied that the workers' compensation judge was correct in concluding that Mr. Tynes carried his burden of proving his entitlement to SEBs. Not only was there an abundance of evidence to support a finding that Mr. Tynes was unable to earn 90 percent or more of his pre-injury income, but there was also *88 evidence that Gaylord failed to fulfill the requirements of La. R.S. 23:1226 by not providing Mr. Tynes with prompt rehabilitation services.
Having determined that Mr. Tynes satisfied his initial burden of proof with regard to his entitlement to SEBs, we now address Gaylord's alternative argument that Mr. Tynes' benefits were properly terminated pursuant to La. R.S. 23:1221(3)(d)(iii). Noting that Mr. Tynes is currently receiving social security disability benefits in the amount of $1,448.00 per month and retirement disability benefits from Gaylord in the amount of $791.63 per month, Gaylord alleges that Mr. Tynes has not made any effort to locate employment within his medical restrictions because he can make more money "by sitting at home." Gaylord argues that because Mr. Tynes is receiving social security disability benefits and retirement disability benefits, he is "retired" within the meaning of La. R.S. 23:1221(3)(d)(iii). We disagree.
As set forth in La. R.S. 23:1221(3)(d), "The right to supplemental earnings benefits pursuant to this Paragraph shall in no event exceed a maximum of five hundred twenty weeks, but shall terminate ... [w]hen the employee retires; however, the period during which supplemental earnings benefits may be payable shall not be less than one hundred four weeks." In Allen v. City of Shreveport, 93-2928, p. 7 (La.5/23/94), 637 So.2d 123, 126-127, the Louisiana Supreme Court concluded that a worker retires under La. R.S. 23:1221(3)(d)(iii) when: (1) the worker withdraws from the work force; or (2) the worker draws old age social security benefits, whichever comes first. The court found that Allen, a 55-year-old city worker who suffered a hernia during his employment with defendant, was entitled to receive SEBs because he was unable to earn 90 percent or more of his pre-injury wages. Discounting the argument that Allen's early retirement from the city meant he had "retired" under La. R.S. 23:1221(3)(d)(iii), the court noted as follows:
The Social Security Act makes it clear that early retirement and retirement are two different things. Allen could not return to his former job with the City of Shreveport and therefore elected to take early retirement benefits due him at age 55 because of 20 years service. If Allen had accepted retirement benefits in lieu of returning to his former job, he would be retired and not entitled to SEBs. However, he accepted early retirement benefits only because his former job was not available to him.
Allen, 93-2928 at 6, 637 So.2d at 126.
Similarly, in the instant case, Mr. Tynes was unable to return to his previous job due to the work-related injury he sustained. Based on his 32 years of employment with Gaylord, Mr. Tynes would have been eligible for early retirement on September 29, 1999, when he turned 55 years old. Because of his injury, Mr. Tynes took disability retirement in June 1999. This does not, however, equate to retirement as is required by La. R.S. 23:1221(3)(d)(iii). There is no evidence that Mr. Tynes is receiving or entitled to receive old age social security benefits. Moreover, although Gaylord offered no vocational rehabilitation services to Mr. Tynes, he decided, on his own, to raise cattle. This attempt at self-employment was sufficient to rebut any argument that Mr. Tynes had removed himself from the work force.
Mr. Tynes earned the benefits due him under the Gaylord retirement plan by his continuous employment with Gaylord over a period in excess of 30 years. His election to take benefits to which he is entitled under Gaylord's retirement plan should not deprive him of any other benefits that *89 his employer is obligated to provide under workers' compensation law unless it is established that he has actually retired, i.e., withdrawn from the work force with no intention of returning. Mr. Tynes' receipt of social security disability benefits and his acceptance of benefits under the Gaylord disability retirement plan does not give rise to a conclusive presumption that he is "retired" within the meaning of La. R.S. 23:1221(3)(d)(iii). Therefore, as there is no evidence of Mr. Tynes' intention to permanently withdraw from the work force, we conclude that the provisions of La. R.S. 23:1221(3)(d)(iii) are inapplicable.

AWARD OF TTDs AND CONVERSION TO SEBs
In assignment of error number two, Gaylord contends that the workers' compensation judge's award of TTDs from the date of the accident to the date of Dr. Gosey's deposition constitutes clear error and must be reversed. Gaylord maintains that there is no medical evidence in the record to show that Mr. Tynes' medical condition changed on that date. This argument is without merit.
The payment of total disability benefits, either permanent or temporary, is authorized by La. R.S. 23:1221 only where an employee is disabled to the extent that he cannot "engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience." La. R.S. 23:1221(1)(a) and (2)(a). Both La. R.S. 23:1221(1)(c) and 23:1221(2)(c), governing temporary total disability and permanent total disability, respectively, state that "whenever the employee is not engaged in any employment... total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment."
As previously indicated, throughout his treatment of Mr. Tynes, Dr. Gosey continually referred to him as "NOT FIT FOR DUTY." In January 1999, Dr. Gosey noted that Mr. Tynes was indefinitely disabled from his job. In April 2001, Dr. Gosey again indicated that Mr. Tynes was "NOT FIT FOR DUTY" and found that Mr. Tynes was "unable to do any type of work." Dr. Gosey's opinion on this issue did not waver until his deposition was taken in July 2001, at which time he speculated that given a job within Mr. Tynes' physical restrictions, he would release Mr. Tynes to return to work. Based on our review of Dr. Gosey's testimony and office notes, it is clear that following the accident on November 2, 1998, Mr. Tynes was temporarily totally disabled and, thus, unable to engage in any employment. Accordingly, we conclude, as did the workers' compensation judge, that Mr. Tynes has satisfied his burden of proving by clear and convincing evidence that he was disabled and entitled to receive TTDs from November 7, 1998, until July 10, 2001, at which time the benefits were properly converted to SEBs based on Dr. Gosey's testimony that Mr. Tynes might be able to return to work if there were a job available that fit within the very tight physical restrictions that he had placed on Mr. Tynes.

ATTORNEY FEES AND PENALTIES
In its final assignment of error, Gaylord contends that the workers' compensation judge erred in awarding Mr. Tynes attorney fees and penalties for the conversion of TTDs to SEBs. Gaylord alleges that it was "legally and manifestly erroneous to determine that [it] acted arbitrarily in any conversions of [Mr. Tynes'] benefits from TTD to SEB when [his] own orthopaedic specialist has testified that [Mr. Tynes] was capable of engaging in gainful employment *90 during the entire course of his treatment, thus showing there never was any entitlement to TTD benefits."
It is well established in Louisiana jurisprudence that an employer can change temporary total disability benefits to supplemental earnings benefits only when the employee has been released back to work by his treating physician. Clark v. State, Department of Corrections, 94-0168, p. 3 (La.App. 3 Cir. 10/5/94), 643 So.2d 467, 469. Whether the refusal to pay compensation benefits or the discontinuation of those benefits warrants the imposition of penalties and attorney fees is a factual question that will not be disturbed upon review in the absence of manifest error. Whiddon v. Livingston Parish Council, XXXX-XXXX, p. 7 (La.App. 1 Cir. 9/28/01), 809 So.2d 421, 427, writ denied, 2001-2893 (La.1/25/02), 807 So.2d 837.
In the instant case, Gaylord began paying TTDs immediately after the November 2, 1998 accident. However, the TTDs were later converted to SEBs and then ultimately terminated on November 11, 2000. The workers' compensation judge found that this conversion from TTDs to SEBs was baseless, arbitrary, and unsupported by the record and ultimately awarded attorney fees in the amount of $3,200.00 and penalties in the amount of $2,000.00. The workers' compensation judge noted as follows: "The record is void of any medical evidence to suggest Tynes had reached MMI [maximum medical improvement] at the time his benefits were converted to supplemental earnings benefits, not from Tynes' treating physician or a physician of the Defendant's choosing." Based on our review of the record, we agree.
Dr. Gosey's notes are clear that following the November 2, 1998 accident, Mr. Tynes was "NOT FIT FOR DUTY" as a mechanic and that this disability was indefinite. Dr. Gosey never released Mr. Tynes to return to work as a mechanic. Moreover, Dr. Gosey was never asked to consider whether Mr. Tynes would be able to return to any other job at Gaylord or with any other employer. Rather, in his July 10, 2001 deposition, Dr. Gosey simply stated that if there was a job that fell within the physical restrictions that he had outlined for Mr. Tynes, then he would release Mr. Tynes to return to work. At no time before this did Dr. Gosey release Mr. Tynes to return to work in any capacity. Conversion of Mr. Tynes' benefits from TTDs to SEBs by Gaylord was arbitrary, thus warranting an award of attorney fees and penalties.

CONCLUSION
Having thoroughly reviewed the instant record, we find no error in the judgment of the workers' compensation judge. Accordingly, the judgment is affirmed in all respects. All costs associated with this appeal are assessed against defendant-appellant, Gaylord Container Corporation.
AFFIRMED.
NOTES
[1] We note that in brief, as well as in oral argument to this court, Gaylord maintains that it does not admit that the activity Mr. Tynes was engaging in on November 2, 1998, constitutes an accident within the meaning of the Louisiana Workers' Compensation Act and that this issue was not before the lower court. Gaylord asserts that the only issue before the workers' compensation judge was whether Mr. Tynes was entitled to indemnity benefits beyond those that have already been paid to him. We disagree. A review of the November 19, 2001 judgment reveals that the judge refers to the incident in question as an "accident." Moreover, pursuant to La. R.S. 23:1031, a claimant is only entitled to compensation benefits where he has sustained "personal injury by accident arising out of and in the course of his employment." Thus, the fact that the workers' compensation judge awarded Mr. Tynes TTDs and SEBs necessarily implies a finding by the judge that Mr. Tynes was injured "by accident arising out of and in the course of his employment."
[2] We note a discrepancy in judgment in that the judge incorrectly refers to November 7, 1998, rather than November 2, 1998, as the date of the accident. However, this discrepancy has no bearing on the correctness of the judgment, as November 7, 1998, is the date on which Mr. Tynes reported the accident to his supervisor and indicated that he could no longer work because of the pain associated with his injury.