867 So.2d 755 (2003)
Stephanie LANOUE
v.
ALL STAR CHEVROLET.
No. 2003 CA 0012.
Court of Appeal of Louisiana, First Circuit.
November 7, 2003.
*756 Vijay Venkataraman, Baton Rouge, Counsel for Plaintiff-Appellant Stephanie Lanoue.
Robert D. Hoover, Matthew W. Tierney, Baton Rouge, Counsel for Defendant-Appellee All Star Chevrolet, Inc.
Before: CARTER, C.J., PARRO, and GUIDRY, JJ.
*757 GUIDRY, J.
A claimant appeals a judgment of the Office of Workers' Compensation Administration (OWC) denying her benefits for failure to prove that she sustained a work-related injury. After careful consideration of the facts and the governing law, we reverse, render in part and remand in part with instructions.

FACTS AND PROCEDURAL HISTORY
The claimant, Stephanie Lanoue, filed a disputed claim for compensation against her employer, All Star Chevrolet, Inc., for failing to pay her workers' compensation benefits relative to an injury she sustained on January 17, 2002. The claimant was employed as a new car salesperson. In her petition, the claimant described her injury as stemming from the collision of a company-owned golf cart with a plate glass window while she was holding onto the golf cart. As a result of the collision, the claimant sustained lacerations and a fracture to her left arm.
All Star Chevrolet denied liability for the claimant's injury. In its answer, All Star Chevrolet averred, "that the accident and injury occurred as a result of a purely personal favor which the claimant was doing for another sales representative while babysitting her children." Following a hearing, the workers' compensation judge (WCJ) rendered judgment in favor of All Star Chevrolet, dismissing the claimant's disputed claim with prejudice. It is from this judgment that the claimant appeals.

APPLICABLE LAW
In order to recover workers' compensation benefits, the claimant must establish that she received a personal injury by accident arising out of and in the course of her employment. La. R.S. 23:1031(A). The terms "arising out of" and "in the course of" constitute a dual requirement. Guillory v. Interstate Gas Station, 94-1767, p. 3 (La.3/30/95), 653 So.2d 1152, 1154.
When considering the "arising out of" employment requirement, the court inquires into the character or origin of the risk suffered by the employee and determines whether this risk was incidental to the employment. Pitts v. Helmrich & Payne Drilling, 98-1345, p. 4 (La.App. 1st Cir.6/25/99), 739 So.2d 335, 337, writ denied, 99-2194 (La.11/5/99), 750 So.2d 187. An accident arises out of employment if the conditions or obligations of the employment caused the employee in the course of employment to be at the place of the accident at the time the accident occurred. Clement v. Dynasty Transportation, 98-2377, p. 5 (La.App. 1st Cir.12/28/99), 756 So.2d 377, 381. An accident also arises out of employment if the risk for which the injury resulted was greater for the employee than for a person not engaged in the employment. Lewis v. Houma Industries, 01-0641, pp. 3-4 (La. App. 1st Cir.5/10/02), 818 So.2d 956, 958.
An accident occurs in the course of employment when the employee sustains an injury while actively engaged in the performance of his duties during work hours, either on the employer's premises or at other places where employment activities take the employee. McLin v. Industrial Specialty Contractors, Inc., 02-1539, p. 4 (La.7/2/03), 851 So.2d 1135, 1140. A WCJ's determination regarding the arising out of and in the course of employment inquiries is subject to the manifest error standard of review. Lewis, 01-0641 at 4, 818 So.2d at 958.

DISCUSSION
At issue in this appeal is whether the claimant's conduct, at the time of her *758 accident, can be construed as "arising out of and in the course of" her employment, thereby justifying recovery of workers' compensation benefits. The claimant argues that at the time of the accident, she had driven All Star Chevrolet's golf cart to the dealership showroom in response to a page from the receptionist notifying her that she had a phone call. She admitted at the hearing that she did not know if the page was for a personal or business phone call. At the hearing, the claimant testified that she was "returning to the showroom to park the golf cart in the front of the showroom so [she] could go in and answer the phone." When she arrived at the showroom, she engaged the lock on the golf cart, got out of the vehicle, and then took her co-worker's son out of the golf cart. As she was reaching to take her co-worker's daughter out of the golf cart, the little girl accidentally stepped on the accelerator, which caused the vehicle to lurch forward. The claimant was injured because she was grasping the frame of the golf cart when it collided with the plate glass window of the showroom. The claimant testified that she was driving her co-worker's children in the golf cart so that her co-worker could focus attention on a customer.
In Walker v. Acadian Builders of Gonzales, Inc., 99-0297 (La.App. 1st Cir.5/19/00), 797 So.2d 690, this court reversed a summary judgment in favor of the employer finding that the decedent-employee's death was not work-related. In that case, this court noted:
an employee is not relegated to twiddling his thumbs for the entire time that he is on stand-by. As long as the act is not entirely unreasonable and could be expected of an ordinary human being, the employee is not outside of the scope of his work. Moreover, accidents that occur during periods of rest and relaxation are normally regarded as transpiring in the course of the employment. Personal activities such as: getting fresh air, smoking, resting, eating food or a snack, drinking, including water, beer or wine, taking a bath provided by the employer, using a telephone or a toilet, stair or elevator, and washing work clothes, have been classified as in the course of employment.
Walker, 99-0297 At 4-5, 797 So.2d at 693 (citations omitted).
In reviewing the "arising out of" requirement, the evidence in the record indicates that the reason the claimant was at the place of the accident at the time the accident occurred was because she had been paged by the dealership receptionist to receive a phone call. We place no importance on the fact that it is not known whether the phone call was business-related or not. See Walker, 99-0297 at 4, 797 So.2d at 693. What is clear is that the claimant would not have been at the place of the accident, i.e., in front of the dealership showroom, had the receptionist not paged her to receive a phone call. The WCJ clearly erred in failing to find that the claimant's employment, as demonstrated by her responding to the page from the dealership receptionist, did not obligate her to be at the place of the accident at the time the accident occurred, thus causing the subject accident to "arise" out of her employment.
Likewise, we find that the WCJ manifestly erred in failing to find that the claimant's accident occurred in the course of her employment with All Star Chevrolet. On questioning by the WCJ, the claimant stated that her primary job duty was to "sell new cars to customers." She admitted that had a customer needed her attention, she would have taken the children back to their parents[1] so that she *759 could attend to the customer. She also acknowledged, on cross examination, that she could have returned customer phone calls or made "cold" sales calls to customers to see if they were interested in purchasing a new car.
Instead, the claimant stated that because she was not presently occupied with a customer, she offered to keep her co-worker's children and transport them on the golf cart with her as she traversed the car lot looking for customers. Even while she had the children with her in the golf cart, claimant transported the internet sales manager around the car lot, at his request, to look for a specified vehicle. She also immediately sought to report to the dealership showroom when the receptionist paged her.
Thus, the evidence shows that the claimant was at least partially, actively engaged in the performance of her work duties at the time the accident occurred. Cf. McLin, 02-1539 at 9-10, 851 So.2d at 1143 (wherein the court stated "[w]e can find no support for the proposition that, because an employee happens to travel along his usual route while returning home from a special mission, the employee ceases to be protected under the [special mission] exception.") Furthermore, the accident at issue took place on the premises of All Star Chevrolet during the claimant's regular work hours. Being mindful of these facts and circumstances in light of the jurisprudential tenet "that worker's compensation law is to be liberally construed in favor of coverage,"Tynes v. Gaylord Container Corporation, 02-0519, p. 6 (La. App. 1st Cir.2/14/03), 844 So.2d 80, 86, writ denied, 03-0769 (La.5/9/03), 843 So.2d 404, we find that the subject accident did occur in the course of the claimant's employment and thus the claimant is entitled to benefits under the Workers' Compensation Act.
Accordingly, because we hold that the WCJ clearly erred in failing to find that the claimant's injury was work-related, we will decide the issues in the appeal before us de novo. See Joseph v. J.E. Merit Constructors, Inc., 01-1666, p. 7 (La.App. 1st Cir.6/21/02), 822 So.2d 72, 77, writ denied, 02-2295 (La.4/4/03), 840 So.2d 1201.
In an amendment to her disputed claim form, the claimant requested benefits for permanent partial disability pursuant to La. R.S. 23:1221(4) et seq. That statute states, in pertinent part:
(4) Permanent partial disability. In the following cases, compensation shall be solely for anatomical loss of use or amputation and shall be as follows:
* * *
(f) For the loss of an arm, sixty-six and two-thirds percent of wages during two hundred weeks.
* * *
(o) In all cases involving a permanent partial anatomical loss of use or amputation of the members mentioned hereinabove, compensation shall bear such proportion to the number of weeks provided for herein for the total loss of such members as the percentage loss or impairment to such members bears to the total loss of the member, provided that in no case shall compensation for an injury to a member exceed the compensation payable for the loss of such member.

*760 * * *
(q) No benefits shall be awarded or payable in this Paragraph unless the percentage of the anatomical loss of use or amputation, as provided in Subparagraphs (a) through (o) of this Paragraph or the percentage of the loss of physical function as provided in Subparagraph (p) or (s) of this Paragraph is as established in the most recent edition of the American Medical Association's "Guides to the Evaluation of Permanent Impairment". (Emphasis added).
The claimant's treating physician, Dr. Joe A. Morgan, an orthopedist, opined that the claimant had a five-percent, permanent physical impairment to the left upper extremity from a fracture at her left elbow joint. However, in rendering this opinion, he acknowledged that the anatomical rating came from his "orthopedic surgeon's manual." Louisiana Revised Statutes 23:1221(4)(q) specifically requires that the percentage of anatomical loss of use as provided in subparagraph (o) must be "as established in the most recent edition of the American Medical Association's "Guides to the Evaluation of Permanent Impairment" " in order for benefits to be awarded under La. R.S. 23:1221(4). Since Dr. Morgan indicated that his rating was based simply on his orthopedic surgeon's manual, benefits for permanent partial disability cannot be awarded on the basis of this evidence. We will, therefore, remand this matter to the OWC for the taking of additional evidence as to the extent of the claimant's anatomical loss of use under the American Medical Association's "Guides to the Evaluation of Permanent Impairment." Thereafter, the WCJ should determine whether the claimant is entitled to permanent partial disability benefits under La. R.S. 23:1221(4). See Durbin v. State Farm Fire and Casualty Company, 558 So.2d 1257, 1261 (La.App. 1st Cir.1990).
We further find that the claimant is not entitled to any further disability benefits based on the following facts.[2] Benefits for temporary total disability can only be awarded if a claimant proves by clear and convincing evidence that she is physically unable to engage in any employment. La. R.S. 23:1221(1)(c); Gordon v. Sandersons Farms, 96-1587, p. 8 (La.App. 1st Cir.5/9/97), 693 So.2d 1279, 1285. Dr. Morgan testified by deposition that he did not find the claimant to be disabled from working as a result of her injury. He stated that according to his medical notes, on her first few visits, he had documented that the claimant could continue to work, but later when he learned she had stopped working, he simply noted that she had stopped working. Finally, on March 19, 2002, Dr. Morgan stated that he had made a note to release the claimant to return to work in a month.
When questioned regarding the three work releases that excused the claimant from returning to work from February 5, 2002 to April 16, 2002, Dr. Morgan identified the work releases as being issued by his office, specifically his nurse, and stated "[t]hey sometimes exceed their authority andthough, I don't know exactly what to tell you, but I never had it in here [his medical notes] to excuse her from work, but I did have in there on 03/19 a note to release her to return to work."
At the hearing, the claimant acknowledged that immediately following the accident *761 she worked from January 17, 2002 until February 6, 2002, with the exception of January 19, 2002. Thereafter, the claimant stated that she requested and received work releases from Dr. Morgan's office. She testified that the reason she could not work from February 6, 2002 to April 16, 2002, was because of the medication she had been prescribed and because physical therapy visits of one-hour duration three times a week caused the pain in her left arm to increase.
In his deposition, Dr. Morgan testified as follows regarding the claimant's level of pain and the medications prescribed to her:
But her level of pain began to diminish after the visit of 02/05/02. I called in a lesser strength of pain medicine for her on 02/18/02. And then on 02/22/02, I called in an even lesser strength dose, which was Darvocet. And then the last medicine I gave her wasI didn't actually give it to her, she was taking over-the-counter. She was taking Ibuprofen and she was taking Darvocet on 03/19/02 for that. That was not a new prescription. That was part of the old prescription that I had given her.
Thus, considering the evidence in the record before us, we find that the claimant failed to establish, by clear and convincing evidence, that she was entitled to further disability benefits.
The claimant also seeks to recover workers' compensation medical benefits. Louisiana Revised Statutes 23:1203(A) provides that "the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal...." At the hearing, the following medical expenses, paid by the claimant or her private health insurer, were established: Bone & Joint Clinic$566.00; Affiliated Therapy Services$894.43; North Oaks Health System$2,039.25; Walgreen's$120.73. The claimant testified at the hearing that All Star Chevrolet did not pay any portion of the aforementioned medical expenses. All Star Chevrolet did not present any evidence proving that it had paid any of the medical expenses proven by the claimant. Furthermore, the claimant asserted at the hearing that she paid the premiums for her private health insurance, which she obtained through her retirement from CNA Insurance. Thus, we find that All Star Chevrolet is liable for all of the medical expenses proven by the plaintiff. See Parkes v. Prien Pines Nursery, 98-384, p. 8 (La.App. 3rd Cir.11/4/98), 722 So.2d 36, 43, writ denied, 98-2993 (La.1/29/99), 736 So.2d 837.
As for the claimant's request for penalties and attorney fees pursuant to La. R.S. 23:1201(F), we find that the imposition of the same is not warranted under the facts of this case, because the claimant's request for workers' compensation benefits was reasonably controverted by All Star Chevrolet. An employer should not be liable for penalties or attorney fees for taking a close factual or legal question to court for resolution. Lummus v. Shoney's of LaPlace, 97-1140, p. 6 (La.App. 5th Cir.6/30/98), 713 So.2d 1290, 1293, writ denied, 98-2059 (La.11/6/98), 728 So.2d 394; see also La. R.S. 23:1201(F)(2).

CONCLUSION
Having found that the claimant sustained a personal injury arising out of and in the course of her employment with All Star Chevrolet, we reverse the judgment of the WCJ dismissing the claimant's disputed claim for workers' compensation benefits. We hereby render judgment in favor of the claimant for medical expenses incurred in the amount of $3,620.41, *762 bearing legal interest from the date compensation was due until the date of satisfaction. Finally, we remand this matter to the OWC for the specific purpose of determining if the claimant is entitled to permanent partial disability benefits under La. R.S. 23:1221(4). All costs of this appeal are assessed to the employer, All Star Chevrolet.
REVERSED, RENDERED IN PART AND REMANDED IN PART WITH INSTRUCTIONS.
NOTES
[1] The claimant testified at the hearing that her co-worker's husband had brought the children to the dealership along with another gentleman and that she sought permission from either the co-worker or the co-worker's husband to take the children with her. She also stated that the co-worker's husband was not an employee of the dealership.
[2] Although the claimant only claimed benefits pursuant to La. R.S. 23:1221(4) in her amended complaint, in her original complaint she simply noted that no wage benefits had been paid. All Star Chevrolet, in its pre-trial statement, indicated that among the issues to be litigated was whether the claimant was entitled to any temporary total or permanent partial disability benefits. Thus, we address claimant's entitlement under both provisions.