818 So.2d 956 (2002)
Shawn LEWIS
v.
HOUMA INDUSTRIES.
No. 2001 CA 0641.
Court of Appeal of Louisiana, First Circuit.
May 10, 2002.
Delbert G. Talley, Covington, Counsel for Plaintiff/Appellant, Shawn Lewis.
Ronald A. Johnson, Rene S. Paysse, Jr., New Orleans, Counsel for Defendant/Appellee, Houma Industries.
Before: GONZALES, KUHN, and PHILIP C. CIACCIO,[1] JJ.
*957 GONZALES, Judge.
In this appeal, Shawn Lewis appeals from a judgment dismissing his claim for workers' compensation benefits against his former employer, Houma Industries, based on the workers' compensation judge's determination that Mr. Lewis' injuries did not arise within the course and scope of his employment.

FACTUAL AND PROCEDURAL BACKGROUND
In 1998, Houma Industries employed Mr. Lewis as an oilfield rigger. Mr. Lewis' work schedule consisted of working offshore for two weeks and then having one week off. According to Mr. Lewis, during the week when he was not working offshore, he usually worked in Houma Industries' yard as a helper and stayed in a bunkhouse provided free of charge by Houma Industries to its employees.
At the beginning of October 1998, Houma Industries returned its offshore workers to land earlier than scheduled due to bad weather. On Friday, October, 2, 1998, a Houma Industries' supervisor offered Mr. Lewis employment on a new landbased project that was to start in the yard on Monday, October 5, 1998. Mr. Lewis accepted the employment. Rather than return to his home in Sun, Louisiana, Mr. Lewis stayed in the Houma Industries bunkhouse over the weekend in preparation to begin the new job on Monday morning at 6:00 a.m. Several other employees, including James Hogan and Roy Hogan, were also staying in the bunkhouse and were scheduled to work on the new job.
In his deposition, Mr. Lewis testified he went to sleep at approximately 10:30, Sunday night, October 4, 1998. In the early morning hours of Monday, James Hogan and Roy Hogan kicked open the door to Mr. Lewis' room and began screaming that Mr. Lewis had stolen some of their food. James Hogan struck Mr. Lewis several times and then repeatedly kicked him after he fell to the floor. Mr. Lewis was treated at the emergency room of Charity Hospital in New Orleans, Louisiana, and subsequently was required to undergo surgery for his injuries. As a result of the incident, Mr. Lewis experienced seizures, chronic migraine headaches, vertigo, a loss of feeling on the left side of his face, and a loss of hearing in his left ear. Houma Industries refused to pay Mr. Lewis' medical expenses.
On October 5, 1999, Mr. Lewis filed a disputed claim for compensation, seeking benefits and medical treatment. The matter was ultimately submitted to the workers' compensation judge for decision. On January 1, 2001, the workers' compensation judge signed a judgment, denying Mr. Lewis' claim against Houma Industries. The judgment stated, "Claimant failed to prove that the accident was in the course and scope of his employment." Mr. Lewis appeals from this adverse judgment, contending the workers' compensation judge erred in dismissing his claim and in deciding his injuries "did not arise out of his employment, and were not incident to his employment."

APPLICABLE LAW
A personal injury is compensable under the Workers' Compensation Act only if it results from an accident "arising out of and in the course of employment." La. R.S. 23:1031; Pitts v. Helmrich & Payne Drilling, 98-1345 (La.App. 1 Cir. 6/25/99), 739 So.2d 335, 337, writ denied, 99-2194 (La.11/5/99), 750 So.2d 187. The terms "arising out of" and "in the course of in Section 1031 are dual requirements that cannot be considered in isolation from each other. In a close case, a strong showing with reference to one requirement may *958 compensate for a weak showing with reference to the other requirement. Id. When there is a weak showing with respect to both requirements, the employee is not entitled to compensation benefits. Id.
To evaluate the "course of employment" requirement, the court focuses on whether the employee sustains an injury while actively engaged in the performance of his duties during working hours, either on the employer's premises or at a place contemplated by employment activities. Id. This inquiry focuses upon the time and place relationship between the injury and the employment. Id. When considering the "arising out of employment" requirement, the court inquires into the character or origin of the risk suffered by the employee and determines whether this risk was incidental to the employment. Id. An injury arises out of employment if the risk from which the injury resulted was greater for the employee than for a person not engaged in the employment. Id. A workers' compensation judge's determination regarding the course and scope of employment inquiry is subject to the manifest error standard of review. See Prevost v. Jobbers Oil Transport Company, 97-2514 (La.App. 1 Cir. 6/29/98), 713 So.2d 1208, 1210; Cf. Baumeister v. Plunkett, 95-2270 (La.5/21/96), 673 So.2d 994, 998 (wherein the Louisiana Supreme Court held that, for purposes of vicarious liability, a district court's determination that a particular act is within the course and scope of employment is a factual finding governed by the manifest error rule).

DISCUSSION
It is arguable that the "arising out of employment" inquiry is met in this case. The risk of Mr. Lewis being injured by Mr. Hogan was greater for Mr. Lewis than for a nonemployee of Houma Industries, because only Houma Industries employees were allowed to stay in the company bunkhouse. Mr. Lewis was staying in the bunkhouse only because he was a Houma Industries employee who was scheduled to begin a new job for his employer. On the other hand, the workers' compensation judge correctly concluded the "course of employment" inquiry was not met in this case. Although Mr. Lewis was in his employer's bunkhouse when injured, he was not "actively engaged in the performance of his duties during working hours." Prior to the incident, Mr. Lewis had not worked for several days. His activities in the bunkhouse were personaleating, bathing, reading, and sleeping. These activities were in furtherance of Mr. Lewis' personal needs, rather than the needs of Houma Industries. Further, Mr. Lewis was not required to reside at the bunkhouse. He was free to reside anywhere when he was not working. Mr. Lewis claimed employees staying in the bunkhouse were "on call;" however, the factual explanation of the circumstances under which the employees might be called to work does not support this description. Although employees staying in the bunkhouse were the first to be given the option to accept "on call" employment, Mr. Lewis testified these employees were not required to accept and could decline offered employment opportunities.[2] Under these facts, Mr. *959 Lewis was no more "on call" during his off-duty hours than any other worker who can be called to substitute for an ill or absent co-worker. Based on these facts, the workers' compensation judge did not manifestly err in concluding Mr. Lewis was not in the course of his employment when the accident occurred. See Pitts, 739 So.2d at 338; see also Bostwick v. M.A.P.P. Industries, Inc., 97-791 (La.App. 5 Cir. 12/30/97), 707 So.2d 441, 445.

DECREE
For the foregoing reasons, the workers' compensation judge's judgment is AFFIRMED. Costs of the appeal are assessed to Mr. Lewis.[3]
KUHN, J., concurs and assigns reasons.
KUHN, J., concurring.
I write separately simply to note that while this opinion declares that claimant was outside the course and scope of his employment at the time of his injury, it leaves unresolved the issue of whether he is entitled to recover his damages in tort.
NOTES
[1] The Honorable Philip C. Ciaccio, Judge (retired), Fourth Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] In his deposition, Mr. Lewis testified as follows:

Q: [by defense counsel] Were you required to stay in the bunkhouse during your time period off?
A: [by Mr. Lewis] No. You weren't required to unless you wanted to be on call.
Q: And when you say "you wanted to be on call," what does that mean?
A: If they had a job come up overnight, instead of having to call like Alabama a lot of our guys were from Alabama. And they'd have to call them, and it would take them a day or two to get there. If you were in the bunkhouse, you were on first call. They'd pull you right out and tell you you were leaving at like 5:00 the next morning.
Q: Is that something that you could choose to accept or decline?
A: Yeah.
Q: So, if they said, "I want you to go out on this job" and this is your week off, you could tell them no?
A: If you wanted to. I mean. But if you stayed in the bunkhouse, that's usually what you wanted to do. So, I mean you were looking for work.
[3] Mr. Lewis, a pauper, may nevertheless be assessed with costs under La. C.C.P. art. 5188.