880 So.2d 932 (2004)
ARABIE BROTHERS TRUCKING CO. and American Interstate Insurance Company
v.
Patrick GAUTREAUX, Graham Neill, Individually and As Owner of A & G Tree and Stump Removal, A & G Tree and Stump Removal, and TTC, Inc.
No. 2003 CA 0120.
Court of Appeal of Louisiana, First Circuit.
August 4, 2004.
Rehearing Denied September 21, 2004.
*934 Lawrence B. Frieman, Metairie, for Plaintiffs/Appellees Arabie Brothers Trucking Co. and American Interstate Insurance Company.
Michael L. Hebert, Baton Rouge, for Defendant/Appellant Patrick Gautreaux.
Before: PETTIGREW, DOWNING, and McCLENDON, JJ.
PETTIGREW, J.
In this workers' compensation case, Patrick Gautreaux, appeals the judgment of the Office of Workers' Compensation (OWC), in favor of Arabie Brothers Trucking Co. (Arabie) and American Interstate *935 Insurance Company (American). The OWC judge determined that Mr. Gautreaux was not within the course and scope of his employment with his direct employer A & G Tree and Stump Removal (A & G) at the time of his accident and injury. For the reasons that follow, we affirm in part, reverse in part, render in part, and remand.

FACTS AND PROCEDURAL HISTORY
On January 27, 2000, Mr. Gautreaux was seriously injured when a large tree, which he was cutting, fell, crushing Mr. Gautreaux to the ground. At the time of the accident, Arabie was clearing a commercial site for Lamar Contractors in Houma, Louisiana. Mr. Gautreaux was directly employed by A & G and sub-contracted by Arabie to grind and remove two tree stumps at the site. A & G did not have workers' compensation insurance. Following the accident, Arabie, through its workers' compensation insurer, American, began paying workers' compensation benefits to and medical expenses on behalf of Mr. Gautreaux. On October 5, 2000, Arabie and American filed a disputed claim for compensation and petition for declaratory judgment against Mr. Gautreaux, Graham Neill, individually and as owner of A & G, A & G, and T.T.C. Illinois, Inc.,[1] asserting that Mr. Gautreaux was not in the course and scope of his employment with A & G at the time of the accident and that the accident did not arise out of his employment. Plaintiffs sought indemnification from Mr. Neill and/or A & G, and a judgment declaring that no further workers' compensation benefits were due to Mr. Gautreaux.
Mr. Gautreaux answered, reconvened, and filed a cross claim. In his reconventional demand, Mr. Gautreaux asserted that Arabie was his employer, statutory employer, or borrowing employer, or, alternatively, that he was an independent contractor engaged in manual labor, entitling him to workers' compensation benefits from Arabie and American. In his cross claim, Mr. Gautreaux contended that Mr. Neill, individually and as owner of A & G, was his employer or statutory employer, entitling him to workers' compensation benefits.
Trial in the matter was held and judgment signed on December 4, 2002, in favor of plaintiffs.[2] The OWC judge determined:
1) Mr. Gautreaux's injuries did not occur while in the course and scope of his employment with A & G and, therefore, Mr. Gautreaux was not entitled to further workers' compensation benefits;
2) Arabie's claim for indemnification was granted;
3) Arabie was entitled to take advantage of all credits and offsets allowed; and
4) Neil Arabie, Gary Pitre, and Bryan Guillot did not violate La. R.S. 23:1208.
It is from this judgment that Mr. Gautreaux has appealed, assigning the following specifications of error:[3]
1) The OWC judge erred in finding that Mr. Gautreaux was not an employee of Arabie for purposes of workers' compensation benefits;
*936 2) The OWC judge erred in not finding that Neil Arabie violated La. R.S. 23:1208;
3) The OWC judge erred in not ruling that Mr. Gautreaux's medical claims were not paid or not paid timely;
4) The OWC judge should have awarded attorney fees and penalties; and
5) Mr. Gautreaux is entitled to attorney fees for this appeal.
Arabie answered the appeal, contending that the OWC judge erred in admitting into evidence the transcribed recorded statements of Gary Pitre and Bryan Guillot and the cassette recording of statement purportedly made by Bryan Guillot.[4]

DISCUSSION
An employee who sustains a personal injury by accident arising out of and in the course and scope of his employment is entitled to collect workers' compensation from his employer. La. R.S. 23:1031(A). Thus, as a threshold requirement, a workers' compensation claimant bears the initial burden of establishing by a preponderance of the evidence "personal injury by accident arising out of and in the course of his employment." Hoy v. Gilbert, 98-1565, p. 3 (La.3/2/99), 754 So.2d 207, 209 (per curiam); Bruno v. Harbert Intern. Inc., 593 So.2d 357, 360 (La.1992).
The terms "arising out of" and "in the course of" in Section 1031 are dual requirements that cannot be considered in isolation from each other. In a close case, a strong showing with reference to one requirement may compensate for a weak showing with reference to the other requirement. When there is a weak showing with respect to both requirements, the employee is not entitled to compensation benefits. Guillory v. Interstate Gas Station, 94-1767, p. 3 (La.3/30/95), 653 So.2d 1152, 1154; Lewis v. Houma Industries, XXXX-XXXX, p. 3 (La.App. 1 Cir. 5/10/02), 818 So.2d 956, 957-958.
To evaluate the "course of employment" requirement, the court focuses on whether the employee sustains an injury while actively engaged in the performance of his duties during working hours, either on the employer's premises or at a place contemplated by employment activities. This inquiry focuses upon the time and place relationship between the injury and the employment. When considering the "arising out of employment" requirement, the court inquires into the character or origin of the risk suffered by the employee and determines whether this risk was incidental to the employment. An injury arises out of employment if the risk from which the injury resulted was greater for the employee than for a person not engaged in the employment. Mitchell v. Industrial Fill Materials, Inc., 2002-2021, p. 3 (La.App. 1 Cir. 7/2/03), 859 So.2d 36, 39; Lewis, XXXX-XXXX at 3-4, 818 So.2d at 958.
Furthermore, courts have consistently held that an employee is protected during work hours, despite minor deviations from instructions or place of work, if what he does could reasonably be contemplated as humanly incidental to his service as an employee and does not unreasonably increase the risk of injury. Hoy, 98-1565 at 3, 754 So.2d at 209; Robinson v. F. Strauss & Son, Inc., 481 So.2d 592, 593 (La.1986).
It is well settled that a determination regarding the course and scope of employment is subject to the manifest error *937 standard of review. Lewis, XXXX-XXXX at 4, 818 So.2d at 958. Generally, the mere fact that an employee fails to follow specific instructions of his employer does not normally take him out of course and scope of his employment. Harkness v. Olcott Stone Motors, 203 La. 947, 953, 14 So.2d 773, 775 (1943); Sears v. Peytral, 151 La. 971, 975-976, 92 So. 561, 563 (1922). Moreover, the relationship of employer/employee is a contractual relationship and, therefore, resolves itself into a question of fact to be determined by evidence to be presented in a compensation case. Menard v. Brown & Cassidy Warehouse, Inc., 72 So.2d 891, 893 (La.App. 1 Cir.1954).
In the instant case, the OWC judge determined that Mr. Gautreaux's injuries did not occur while in the course and arising out of his employment with A & G, and, therefore, he was not entitled to further workers' compensation benefits. This finding is not in dispute. In fact, Mr. Gautreaux stipulates in brief to this court that his accident did not occur in the course and scope of his employment with A & G.
As set forth in La. Civ.Code art. 1853, "[a] judicial confession is a declaration made by a party in a judicial proceeding" and "constitutes full proof against the party who made it." A judicial admission or confession is an express acknowledgement of adverse facts. Howard Trucking Co., Inc. v. Stassi, 485 So.2d 915, 918 (La.1986), cert. den., 479 U.S. 948, 107 S.Ct. 432, 93 L.Ed.2d 382 (1986). It has the effect of waiving evidence as to the subject of the admission or withdrawing the subject matter of the confession from issue. LIGA/Mortem Risk Management v. Franks, 99-0670, p. 5 (La.App. 1 Cir. 6/23/00), 768 So.2d 622, 625, writ denied, 2000-2201 (La.10/13/00), 771 So.2d 652.
The stipulation by Mr. Gautreaux that he was not in the course and scope of his employment with A & G at the time of the accident is a judicial confession of facts. Thus, although this court may not agree with same, we are bound (as is Mr. Gautreaux) to give this stipulation legal effect. Accordingly, the OWC judge's finding concerning this issue is not subject to review by this court. La. Civ.Code art. 1853; La.Code Civ. P. art. 2164. See also Rabathaly v. Breaux, 99-244, p. 4 (La. App. 5 Cir. 7/27/99), 738 So.2d 1182, 1184; Favrot v. Bates, 1 McGl. 130 (La.App. 1881).
However, our inquiry does not end here. As noted by Mr. Gautreaux, the fact that he was not in the course and scope of his employment with A & G at the time of the accident does not resolve all the potential legal issues of liability for Arabie and American. There remain several unanswered questions regarding the employer/employee relationship between Mr. Gautreaux and Arabie.
In its judgment, the OWC judge specifically delineated the issues addressed below as follows:
The issues presented to this Court at trial for consideration were: 1) whether or not the defendant, Patrick Gautreaux, was injured while in the course of and arising out of his employment with defendant, A & G Tree and Stump Removal, and if so, whether or not the defendant, Patrick Gautreaux, is entitled to workers' compensation benefits; 2) whether or not the defendant, A & G Tree and Stump Removal, is liable for reimbursement of workers' compensation benefits paid [by] plaintiff, Arabie Brothers Trucking Co.; 3) whether or not the plaintiff, Arabie Brothers Trucking Co., overpaid the defendant, Patrick Gautreaux, workers' compensation benefits and are entitled to a credit pursuant *938 to LSA-R.S. 23:1206, 23:1223, 23:1225 and/or any other section; and 4) whether or not Neil Arabie, Gary Pitre and Bryan Guillot violated LSA-R.S. 23:1208.
Nonetheless, a review of the instant record reveals other legal issues that were before the OWC judge for consideration, such as 1) was Mr. Gautreaux either a borrowed employee or statutory employee of Arabie; 2) was Mr. Gautreaux within the course and scope of employment with Arabie at the time of the accident; 3) and was Mr. Gautreaux either an invitee or trespasser of Arabie's at the time.
In a worker's compensation case, the issue of whether a borrowed servant relationship exists is a matter of law for the court to determine. Griffin v. Wickes Lumber Co., XXXX-XXXX, p. 7 (La. App. 1 Cir. 12/20/02), 840 So.2d 591, 596, writ denied, XXXX-XXXX (La.9/19/03), 853 So.2d 640. Questions of law cannot be confessed or admitted. Howard Trucking Co., Inc., 485 So.2d at 918. Based on our review of the record before us, we find that the OWC judge's failure to either address these issues or recognize that these issues were before it was legal error.
When a trial court commits an error of law, the reviewing court is not subject to the manifest error standard and can make an independent determination of the facts from the record on appeal. As noted by the Louisiana Supreme Court in Bujol v. Entergy Services, Inc., XXXX-XXXX, p. 17 (La.5/25/04), ___ So.2d ___, ___, 2004 WL 1157413, "[i]f the trier of fact applied the incorrect law ... and if the appellate court determines the error could have affected the outcome below, the manifest error rule does not apply, and the appellate court makes an independent determination of the facts from the record on appeal."
As reflected in the judgment below, the OWC judge failed to address certain legal issues and, thus, could not have applied the correct law in determining the potential liability of Arabie to Mr. Gautreaux for workers' compensation benefits. Because this legal error by the OWC judge clearly affected the outcome of this case, we will conduct a de novo review of the record and consider the issues regarding the potential liability of Arabie and American for workers' compensation benefits.
Neil Arabie, superintendent on the project for Arabie, testified at trial that Arabie was hired by Lamar Contractors to remove trees and put in landfill in preparation for the construction of a video store in Houma. Arabie employees knocked down about twenty trees, with their stumps, using heavy equipment, with the exception of two trees that were near the highway and close to utility, drainage, and sewer lines. Mr. Arabie stated that his company was to cut down the two remaining trees but, because Arabie did not have stump grinding equipment, it was necessary to hire an outside company to grind the stumps. Arabie sub-contracted with A & G to grind the stumps.[5]
Mr. Graham Neill, owner of A & G, testified that the night before the accident, he received a telephone call from Mr. Arabie. Mr. Arabie indicated to Mr. Neill that he needed to have two stumps ground the next morning because sand was going to be delivered for fill. Mr. Neill testified he asked Mr. Arabie if the trees were already cut. Mr. Neill noted he had other work for Mr. Gautreaux and could send *939 him to the construction site later in the day if necessary. Mr. Arabie indicated that the trees would be cut. Mr. Neill then contacted Mr. Gautreaux and assigned him the job, explaining to Mr. Gautreaux that all he had to do was grind the two stumps.
The evidence shows that Mr. Gautreaux arrived at the construction site with a stump grinder between seven and eight a.m. the next morning. Only one of the trees had been cut by Arabie. Mr. Arabie showed Mr. Gautreaux the first stump to be ground, and Mr. Gautreaux began grinding the stump. Mr. Arabie testified that they had not gotten to the second tree at that point in time. Mr. Arabie stated he was going to have another Arabie employee make a cut with a chainsaw on the other tree so the excavator could push it down. Mr. Arabie's testimony further indicates that Mr. Gautreaux asked Mr. Arabie about the dirt that was being removed from the site, stating he needed some. Mr. Arabie indicated he told Mr. Gautreaux that if he could work out a deal with one of the truck drivers, he could have the dirt. Mr. Gautreaux then left with one of the dump truck drivers to show the driver where to bring the dirt.
Mr. Gautreaux has been in a coma since the day of the accident and, thus, was not available to give testimony concerning his understanding of the agreement about the dirt. No other person witnessed or heard this particular agreement, although Mr. Arabie does indicate by his testimony that a deal was worked out with Mr. Gautreaux. Other Arabie employees verified that Mr. Gautreaux did, in fact, get some dirt.
The next time Mr. Arabie saw Mr. Gautreaux, Mr. Gautreaux had a chainsaw in his hand and was cutting the second tree. Mr. Arabie verified that the chainsaw was provided to the job site by Arabie. He testified that when he saw that the tree was cut half way through the trunk, he told Mr. Gautreaux to stop cutting the tree because it was too dangerous being so close to the four-lane highway. He then told Mr. Gautreaux that he was going to have the excavator push the tree down. Mr. Arabie then went to the other side of the job site. There were no other witnesses to this conversation between Mr. Arabie and Mr. Gautreaux. Mr. Arabie later heard the chainsaw start back up, and, within seconds, the tree fell. Mr. Arabie testified he did not know how Mr. Gautreaux got the chainsaw. Further, he testified that at the time he saw Mr. Gautreaux with the chainsaw cutting on the tree, Mr. Gautreaux was alone. Mr. Arabie acknowledged that Mr. Gautreaux cut the tree with the chainsaw in the right place.
Bryan Guillot was working for Arabie that morning, loading dirt and operating the excavator. He testified that he was told by either Mr. Arabie or Gary Pitre, another Arabie employee, that once a cut was made in the tree, he was needed to push the tree over with the excavator. The tree was close to the road, and it was very windy that morning. When Mr. Guillot got to the location of the tree in the excavator, he saw Mr. Gautreaux with a chainsaw in his hand. Mr. Gautreaux waved him off, telling him he was not needed. Mr. Guillot stated he was still on the scene near the tree when it fell. He did not see Mr. Gautreaux, but heard the chainsaw. The tree fell on the edge of the excavator and then onto Mr. Gautreaux.
Gary Pitre testified that he was an Arabie employee hired to cut trees and haul dirt. He was not aware of anybody having cut trees with a chainsaw that day. He verified that Mr. Gautreaux was already on the site when he arrived. Mr. Pitre was grinding a stump and did not see *940 Mr. Gautreaux cutting down a tree with a chainsaw. At the time of the accident, Mr. Pitre was directing traffic on the road because dump trucks were coming in and out and the excavator was moving into the lane near the second tree. Mr. Pitre was in very close proximity to where the accident occurred. In fact, he was almost hit by the tree when it fell. However, he was not aware of Mr. Gautreaux cutting the tree with a chainsaw.
A thorough review of the testimony of Neil Arabie, superintendent on the project for Arabie, and Graham Neill, owner of A & G, proves factually that Mr. Gautreaux was not a trespasser. Both verify that Mr. Gautreaux was assigned to go to the job site and grind two tree stumps. Further, at face value it would appear that Mr. Gautreaux was not a statutory employee of Arabie, because there was no written contract between Arabie and A & G providing for such as required by La. R.S. 23:1061 A.[6] Thus, our focus shifts to a discussion of whether Mr. Gautreaux was a borrowed employee of Arabie.
The terms "statutory employee" and "borrowed employee" are distinguishable for workers' compensation purposes. This distinction is still recognized following the 1997 amendments to La. R.S. 23:1031 and 23:1061, which overruled the statutory employer tests as stated in Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986), and Kirkland v. Riverwood International USA, Inc., 95-1830 (La.9/13/96), 681 So.2d 329. Moreover, the test for determining who is a borrowed employee is still applied by the courts. See Doucet v. National Maintenance Corp., XXXX-XXXX, p. 8, n. 6 (La.App. 1 Cir. 6/21/02), 822 So.2d 60, 67, n. 6; Maddox v. Superior Steel, XXXX-XXXX, p. 7 (La.App. 1 Cir. 9/28/01), 814 So.2d 569, 574.
As previously indicated, the issue of whether a borrowed servant relationship exists is a matter of law for the court to determine. Griffin, XXXX-XXXX at 7, 840 So.2d at 596. There is no fixed test, nor is the existence of a contract or any other single factor determinative. However, the following should be considered in determining existence of a borrowed employee relationship: right of control; selection of employees; payment of wages; power of dismissal; relinquishment of control by general employer; which employer's work was being performed at time of question; agreement, either implied or explicit, between borrowing and lending employer; furnishing of instructions and place for performance of work in question; length of employment; and acquiescence by employee in new work situation. Id. When a general employer attempts to avoid liability for the actions of its employee by contending the employee was loaned to another employer, the general employer bears the burden of overcoming by a preponderance of the evidence the presumption that he is liable. Billeaud v. Poledore, 603 So.2d 754, 755-756 (La.App. 1 Cir.), writ denied, 608 So.2d 176 (La.1992).
It must be noted again that at the time of trial in the instant case, Mr. Gautreaux was in a coma and not available to give testimony concerning the facts and circumstances of the accident in question. Neil Arabie disputed Mr. Gautreaux's claim for compensation benefits, but his testimony was contradicted in several aspects.
Although Mr. Arabie disclaimed particular knowledge of the deal Mr. Gautreaux worked out to remove dirt, he did acknowledge *941 Mr. Gautreaux could have dirt if he worked out a deal with the drivers. He further acknowledged that Arabie employees loaded the dirt into trucks for Mr. Gautreaux.
Mr. Arabie somewhat contradicted himself concerning whether he was planning to push the tree down with an excavator or cut the tree with chainsaws and then push it down. Mr. Arabie ultimately testified that he planned to have another Arabie employee make a cut in the tree and then push it down with the excavator.
According to Mr. Arabie, he could not recall whether some of the truck drivers were Arabie employees. However, some of the other employees who testified verified that some of the truck drivers were, in fact, Arabie employees. Mr. Arabie acknowledged that Arabie had provided the chainsaw that Mr. Gautreaux was using at the time of the accident. He further testified that when he saw Mr. Gautreaux cutting the tree with the chainsaw, Mr. Gautreaux was alone. To the contrary, other witnesses verified that Gary Pitre, another Arabie employee, was directing traffic near the site of the accident.
Mr. Arabie further testified he met with Graham Neill, owner of A & G, and an A & G employee the day before to show them the two trees. Mr. Neill disputed this, indicating his first knowledge of the job was a phone call he received from Mr. Arabie the night before the job. Mr. Neill indicated he never met with Mr. Arabie at the job site before the job.
Arabie's business was to cut down and remove trees from the job site and to bring in dirt and sand to fill in holes created by the trees that were removed. Mr. Arabie testified he advised Mr. Gautreaux to put the chainsaw down, but did not tell Mr. Gautreaux to remove himself from the area. Although Mr. Arabie had no power or authority to dismiss Mr. Gautreaux from the employment of A & G, he certainly had power and control over Mr. Gautreaux to remove him from the job site if he was interfering. It was Arabie's work that was being done at the time of the accident. Mr. Gautreaux obviously acquiesced in assisting Arabie in cutting down the trees. According to the testimony of another Arabie employee, Bryan Guillot, he was actually taking instructions from Mr. Gautreaux just prior to the accident. Other Arabie employees were in the immediate vicinity and did not instruct Mr. Gautreaux to stop. Gary Pitre was directing traffic near Mr. Gautreaux. Bryan Guillot was standing by with the excavator to finish pushing the tree, if needed, when Mr. Gautreaux was through cutting the tree.
After review of the entire record and transcripts of this proceeding, it is our opinion that Mr. Gautreaux has met the requirements of Griffin. At the time of the accident, Mr. Gautreaux was a borrowed employee of Arabie. Thus, Arabie and its insurer, American, are liable to Mr. Gautreaux for any and all workers' compensation benefits and/or medicals due him because of this accident. Moreover, pursuant to La. R.S. 23:1031 C, Mr. Gautreaux's general or direct employer, A & G, is liable with Arabie jointly and in solido to pay those benefits, and each shall have the right to seek contributions from the other for any payments made on behalf of Mr. Gautreaux.
In answer to this appeal, Arabie assigned as error the OWC judge's ruling that allowed the introduction of alleged tapes and transcribed statements taken from Gary Pitre and Bryan Guillot. Arabie alleges counsel for Mr. Gautreaux failed to comply with the requirements of La.Code Evid. art. 613 by not laying a *942 proper foundation for the introduction of this evidence.
As set forth in La.Code Evid. art. 103 A, "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." The proper inquiry for determining whether a party was prejudiced by a trial court's alleged erroneous ruling is whether the alleged error, when compared to the entire record, had a "substantial effect" on the outcome of the case. If the effect of the outcome of the case is not substantial, reversal is not warranted. Emery v. Owens-Corporation, 2000-2144, p. 7 (La.App. 1 Cir. 11/9/01), 813 So.2d 441, 449, writ denied, XXXX-XXXX (La.5/10/02), 815 So.2d 842. A reviewing court is prohibited from reversing a harmless error. Preatto v. Tidewater Marine, Inc., XXXX-XXXX, p. 11 (La.App. 4 Cir. 2/6/02), 809 So.2d 1084, 1091, writ denied, XXXX-XXXX (La.5/3/02), 815 So.2d 822.
We agree with Arabie that the OWC judge erred in allowing the introduction of the tapes and statements at issue. However, when compared to the entire record, the introduction of this evidence did not have a substantial effect on the outcome of this case. Arabie suffered no prejudice as a result of the OWC judge's actions in this regard. Thus, the error was harmless and does not warrant reversal by this court.[7]

DECREE
For the above and foregoing reasons, we reverse that portion of the judgment wherein the OWC judge found in favor of Arabie Brothers Trucking Co. and against Patrick Gautreaux. Finding that Patrick Gautreaux was a borrowed employee of Arabie Brothers Trucking Co., we render judgment in favor of Patrick Gautreaux and against Arabie Brothers Trucking Co., American Interstate Insurance Company, and A & G Tree and Stump Removal, jointly and in solido, for any and all workers' compensation benefits and/or medicals due Patrick Gautreaux arising from the accident in this case. We remand the case to the OWC judge for determination of the amount of workers' compensation benefits and/or medicals due.
We affirm that portion of the judgment that decrees Neil Arabie, Gary Pitre, and Bryan Guillot did not violate La. R.S. 23:1208. We also affirm the judgment below in as far as it grants the claim for indemnification filed by Arabie Brothers Trucking Co. and remand to the OWC judge for a determination of the amount of contribution due by A & G Tree and Stump Removal to Arabie Brothers Trucking Co. and American Interstate Insurance Company. We further remand for a determination of the amount of penalties and/or attorney fees due, if any, as set forth in La. R.S. 23:1201 F. Moreover, we award Mr. Gautreaux $2,500.00 in attorney fees for this appeal.
All costs associated with this appeal are assessed against Arabie Brothers Trucking Co. and American Interstate Insurance Company.
AFFIRMED IN PART; REVERSED IN PART; RENDERED IN PART; REMANDED.
MCCLENDON, J., dissents.
NOTES
[1] T.T.C. Illinois, Inc., incorrectly identified in the petition as TTC, Inc., was dismissed from the suit prior to trial.
[2] A judgment was originally signed on August 7, 2002, but because of the inclusion of an incorrect paragraph in the judgment, a motion for new trial for clarification of the judgment was filed and granted. The corrected judgment was signed on December 4, 2002.
[3] Although not specifically addressed, all issues raised in this appeal are resolved herein.
[4] Additionally, an Amicus Curiae Brief was filed in the appeal of this matter by Scottsdale Insurance Company and its insureds, T.T.C. Illinois, Inc., Neil Arabie, Gary Pitre, and Bryan Guillot.
[5] Mr. Arabie testified that he hired A & G because its ad in the yellow pages of the telephone book stated it was "fully insured." At the time of the accident in question, however, A & G did not have workers' compensation insurance.
[6] We will pretermit the issue of whether a written contract is required for a manual laborer such as a stump grinder and operator as this case can be resolved without discussion of same.
[7] We note that the tapes and statements are substantially the same as the live testimony of Gary Pitre and Bryan Guillot. Nonetheless, we did not consider them in rendering our decision herein.