994 So.2d 663 (2008)
Billy McLIN
v.
Timmy LeBOUEF d/b/a Kajun Trades.
No. 2008 CA 0378.
Court of Appeal of Louisiana, First Circuit.
September 19, 2008.
*664 Joseph J. Weigand, Jr., Houma, LA, for Plaintiff/Appellee, Billy McLin.
Keith M. Whipple, Houma, LA, for Defendant/Appellant, Timmy LeBouef d/b/a Kajun Trades.
Before PARRO, McCLENDON, and WELCH, JJ.
McCLENDON, J.
In this workers' compensation case, Timmy LeBouef d/b/a Kajun Trades (Kajun) appeals a judgment rendered by the Office of Workers' Compensation (OWC) finding that Kajun's employee, Billy McLin (McLin), was injured in an accident while in the course of and arising out of his employment with Kajun. Following a trial before the OWC court, the OWC judge awarded to McLin temporary total disability benefits from the date of his injury, February 13, 2006, until his full duty release on June 6, 2006. The judgment increased the minimum weekly benefit amount of $121.00 to $181.50 pursuant to LSA-R.S. 23:1171.2, which provides for a 50 percent increase when an employer fails to provide security for compensation as required by LSA-R.S. 23:1168. The judgment further provided for all reasonable and necessary medical treatment, the payment of past medical expenses in the amount of $6,296.77, and the payment of $4,000.00 in penalties, as well as $4,000.00 in attorney fees, together with judicial interest pursuant to LSA-R.S. 23:1201.3.
Kajun appeals, asserting that McLin failed to meet his burden of proving by a preponderance of the evidence that he was employed by Kajun and acting within the course and scope of his employment with Kajun when he was injured on February 13, 2006. McLin answers the appeal and seeks additional attorney fees for work necessitated by the appeal. For the following reasons, we affirm the judgment of the OWC court and render.

TESTIMONY AND EVIDENCE PRESENTED AT TRIAL
McLin alleged in his disputed claim for compensation that he was injured on February 13, 2006, during the course and scope of his employment with Kajun, a contracting company operated by the defendant, Timmy LeBouef, which company does remodeling and roofing work. McLin testified at trial that while nailing shingles on a house located on Shrimper's Row in Dulac, he fell from a roof, sustaining a fractured left wrist and sprained right arm. It is undisputed that McLin sustained injuries on this date and that Kajun had failed to secure employee compensation insurance covering the work done by its employees during the applicable period. The sole issue presented in Kajun's appeal is whether McLin was employed by Kajun and working on the Shrimper's Row house when he was injured on February 13, 2006.
The report of Terrebonne General Medical Center (the hospital), introduced into evidence at trial, reflects that McLin presented to the hospital at approximately 7:30 p.m. on February 13, 2006, with abrasions to his forehead and injuries to both forearms, and stated that he had fallen 17 feet out of a tree. The report further states that McLin was unemployed. However, the emergency physician's record, *665 also dated February 13, 2006, indicates that McLin fell from a roof. The defendant, Timmy LeBouef, who operates Kajun, testified at trial that McLin did not work on the Shrimper's Row house. Gordon Guidry, Jr., Kajun's foreman, stated in his affidavit that McLin's last date of employment with Kajun was January 31, 2006. Guidry testified at trial that he had fired McLin prior to the date on which Kajun employees had begun the work on the Shrimper's Row house. In his affidavit, Guidry also averred that he worked for Kajun, along with McLin, on several dates from December 19, 2005, through January 31, 2006, and at no time observed McLin sustain an injury or heard McLin complain of an injury. Guidry testified that the only knowledge he had of McLin's injury was through Brian Mason, McLin's half-brother, who told him that McLin had fallen out of a tree.
During the testimony of Angel Rodrigue, LeBouef's common-law wife of 17 years, Kajun introduced into evidence a document entitled, "Payroll for February 2006," which lists the names of Kajun employees and does not include McLin's name. Additionally, Kajun introduced into evidence copies of checks paid to Kajun employees and check stubs, which did not reflect any payments to McLin after January 31, 2006. Furthermore, Cody Nettleton, a Kajun employee who, since the date of McLin's accident, had left employment with Kajun and returned to work as a fisherman, testified that he worked on the Shrimper's Row house and did not see McLin there at any time. Nettleton testified at trial that the only people present at the Shrimper's Row house on the date of the alleged accident, in addition to himself, were LeBouef and someone called "Redbird." On cross-examination, Nettleton admitted that he has a family relationship with LeBouef, who is his wife's uncle.
McLin testified at trial that he was employed by Kajun on February 13, 2006, and was nailing shingles on the roof of property located on Shrimper's Row, when he fell 17 feet off the roof, hitting the porch and then the ground. He testified that, because he was injured, he was unable to get back on the roof and had to wait until the end of the workday for a coworker to drive him home. Upon arriving home, McLin called LeBouef to ask for $20.00 for gasoline so that he could drive to the hospital. According to McLin, LeBouef told him not to report to hospital personnel that he was injured on the job because Kajun did not have employee compensation insurance. McLin testified that although he initially stated to hospital personnel that he fell out of a tree, he thereafter told the truth, advising that he fell from the roof while working. Corroborating McLin's statement is the Emergency Physician Record, dated February 13, 2006, which reports that McLin fell from a roof, hit a porch, and then fell to the ground. McLin's statement in this record contradicts his earlier statement made to hospital personnel and recorded in the hospital report.
McLin also testified that, prior to the date of his injury, either LeBouef or Guidry told him that if he fell from a roof while working, he would be fired. McLin stated that he telephoned LeBouef two days after the accident seeking his paycheck, and LeBouef brought him his final wages in cash in an amount exceeding $100.00. McLin denied filing any previous lawsuits, but admitted that he has a criminal record of felony theft and burglary convictions.
McLin's half-brother, Brian Mason, testified that on the date of the accident, McLin was residing with him. Mason stated that McLin came home on that date with blood on him and holding his arm. *666 According to Mason, McLin told him that he had fallen off a roof. Mason stated that he had no money to buy gasoline in order to take McLin to the hospital. According to Mason, LeBouef came to his home to give McLin $20.00 for gasoline. Mason stated that when he heard that McLin had initially told the doctor at the hospital that he had fallen out of a tree, Mason advised McLin to "get his story straight." Thereafter, according to Mason, McLin told the doctor that he had fallen off a roof. Mason admitted on cross-examination that he did not hear the brief conversation between his half-brother and LeBouef that took place when LeBouef allegedly gave McLin $20.00. Mason confirmed that LeBouef later came to his home to give McLin "payroll," which was in the form of cash. Mason testified that he had previously been employed by Kajun, but had quit prior to the date of McLin's accident. He admitted at trial that he has a criminal record.
McLin's brother, Jimmy McLin, averred that he was employed by Kajun on February 13, 2006, on which date he saw his brother fall off the roof of the Shrimper's Row house. Guidry terminated Jimmy McLin's employment one week after the accident, according to Jimmy McLin's testimony. Jimmy McLin admitted that he had previously been convicted of theft.
In rebuttal testimony, Guidry testified that, if he ever told employees they would be fired if they fell off a roof while working, he was joking. LeBouef testified in rebuttal that he did not tell McLin to lie to hospital personnel about the cause of his injury, and he did not go to Mason's home on the date of the accident to give McLin $20.00 for gasoline.

LAW AND ANALYSIS
The Workers' Compensation Act provides coverage to an employee for personal injury by an accident arising out of and in the course of employment. LSA-R.S. 23:1031(A). An accident is defined by LSA-R.S. 23:1021(1) as an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury that is more than simply a gradual deterioration or progressive degeneration.
As a threshold requirement, a workers' compensation claimant bears the initial burden of establishing by a preponderance of the evidence personal injury by accident arising out of and in the course of his employment. Arabie Bros. Trucking Co. v. Gautreaux, XXXX-XXXX, p. 4 (La.App. 1st Cir.8/4/04), 880 So.2d 932, 936, writ denied, 2004-2481 (La.12/10/04), 888 So.2d 846. A claimant's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Bruno v. Harbert International Inc., 593 So.2d 357, 361 (La.1992).
The applicable standard of review in this case is a two-part test: (1) the appellate court must find from the record that there is a reasonable factual basis for the trier of fact's findings, and (2) the appellate court must further determine that the record establishes that the finding is not manifestly erroneous (clearly wrong). Cousin v. Slidell Memorial Hosp., 2002-2600, p. 9 (La.App. 1st Cir.9/26/03), 857 So.2d 576, 581. Factual findings should not be reversed on appeal absent manifest error. If the trial court's findings are reasonable and not manifestly erroneous in light of the record reviewed in its entirety, the appellate court may not *667 reverse. Id. Consequently, when there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous. Id.
Louisiana Revised Statutes 23:1201(F)(2) provides that penalties and attorney fees shall be assessed unless the workers' compensation claim is reasonably controverted or nonpayment results from conditions over which the employer had no control. To reasonably controvert a workers' compensation claim, so as to avoid the assessment of penalties and attorney fees for delaying payment on the claim, the defendant must have some valid reason or evidence for refusing to pay, or must have based his decision on a non-frivolous legal dispute. Sims v. BFI Waste Services, L.L.C., XXXX-XXXX, p. 11 (La.App. 1st Cir.5/16/07), 964 So.2d 998, 1005.
On appeal, Kajun argues that the witness testimony presented at trial by McLin lacks credibility. Kajun points out that McLin, as well as his brother and half-brother, are convicted felons. Kajun emphasizes the fact that Mason's wife was present when LeBouef allegedly visited the Mason home to give McLin the $20.00 for gasoline on the date of the alleged accident. Kajun argues that it is significant that McLin failed to call Mrs. Mason to testify at trial to corroborate her husband's testimony. Moreover, Kajun urges that, in contrast to McLin's biased witnesses, Kajun's witnesses, Guidry and Nettleton, are no longer employed by Kajun and have no reason to testify falsely at trial.
The OWC judge concluded in her written reasons for judgment that there was the potential for bias on the part of the witnesses for each party. The OWC court stated that it had to choose between two contradictory fact patterns and determine whether McLin was injured by falling off a roof while employed by Kajun or by falling out of a tree. The OWC court concluded that the testimony of McLin and his witnesses was more consistent and credible than the testimony of Kajun's witnesses. The court indicated that because Kajun had no employee compensation insurance, it had a motive for asking McLin to tell hospital personnel that he was unemployed. Furthermore, the court believed McLin's explanation regarding his two conflicting statements reflected in his medical records. The court believed that McLin initially cooperated with his employer's request by making a false statement to hospital personnel, but then told the truth, upon the advice of his half-brother. The court stated that the dates of payment to employees, as reflected on the checks and ledgers introduced into evidence by Kajun, support McLin's version of the facts. The OWC judge noted that the employees were generally paid for their work at the end of each job. The court pointed out that Jimmy McLin was paid the week following his brother's accident, corroborating Jimmy McLin's testimony that he was present at the Shrimper's Row job site on the date of his brother's accident. The court stated that Kajun's poor accounting methods and poor record-keeping did nothing to help Kajun's case.

CONCLUSION
After a thorough review of the record, we find there is a reasonable factual basis for the findings of the OWC court, and that the court was not clearly wrong. Although there are issues pertaining to the credibility of the witnesses for each party, we do not find that the OWC judge abused her discretion in concluding that Billy McLin was acting within the course and scope of his employment with Kajun at the time he fell and sustained injuries. Furthermore, we find that the OWC court did *668 not err in awarding McLin penalties and attorney fees, and we award McLin $500.00 in additional attorney fees incurred in responding to the appeal. Accordingly, the judgment of the OWC court is affirmed in all respects. Kajun is assessed with all costs of the appeal.
AFFIRMED AND RENDERED.
WELCH J., concurs without reasons.