WELCH, J.
12Mary Gautreaux appeals a judgment of the Office of Workers’ Compensation (OWC), in favor of Arabie Brothers Trucking Co. (Arabie) and American Interstate Insurance Company (American). We affirm in part, reverse in part, and remand.
FACTUAL AND PROCEDURAL BACKGROUND
The facts forming the background for this appeal are undisputed and can be gleaned from prior opinions of this court.[1] On January 27, 2000, Patrick Gautreaux was seriously injured while cutting a tree which fell on him, crushing him to the ground. As a result of the accident, Patrick remained in a coma until his death in October 2007.
At the time of the accident, Arabie was clearing a piece of property and had subcontracted with Patrick’s direct employer to grind and remove two stumps. After the accident, American, Arabie’s workers’ compensation insurer, began paying workers’ compensation benefits to and medical expenses on behalf of Patrick.
Patrick’s accident spurred a number of disputed workers’ compensation claims. On October 5, 2000, Arabie and American filed a disputed claim in the OWC against Patrick and his direct employer. They sought a judgment declaring that no further workers’ compensation benefits were due to Patrick and sought indemnification from his direct employer. Patrick filed a reconventional demand asserting that Ara-bie was his statutory employer, entitling him to workers’ compensation benefits. The workers’ compensation judge (WCJ) entered judgment in favor of Arabie and American, finding that Patrick was not in the Igcourse and scope of his employment with Arabie at the time of the accident. On appeal, this court reversed, holding *309 that Patrick was a borrowed employee of Arabie, entitling him to all compensation benefits and medicals due him because of the accident. The case was remanded to the OWC for a determination of the amount of compensation benefits and medicals due and the amount, if any, of penalties and attorney’s fees due. Arabie Brothers Trucking Co. v. Gautreaux, 2003-0120 (La.App. 1st Cir.8/4/04), 880 So.2d 932, 941-942, writ denied, 2004-2481 (La.12/10/04), 888 So.2d 846.
Following remand, Patrick was awarded medical and indemnity benefits, but the WCJ declined to award penalties and attorney’s fees. On appeal, the judgment was vacated because Patrick was deceased at the time it was rendered. The matter was remanded to the OWC to allow a substitution and the rendition of a proper judgment. Arabie Brothers Trucking Co. v. Gautreaux, 2010-1999 (La.App. 1st Cir.6/10/11), 2011 WL 2979977 (unpublished ).
Thereafter, Mary Gautreaux, Patrick’s ■ mother, was substituted as the proper party plaintiff and a proper judgment was signed. Mrs. Gautreaux filed an appeal challenging the WCJ’s failure to award penalties and attorney’s fees, its calculation of benefits, and the failure to award costs. This court amended the judgment to tax costs to Arabie and American, but affirmed the judgment in all other respects. Arabie Brothers Trucking Co. v. Gautreaux, 2012-0849 (La.App. 1st Cir.12/21/12), 111 So.3d 1088, writ denied, 2013-0536 (La.4/26/13), 112 So.3d 844.
In 2009, Mrs. Gautreaux filed a supplemental 1008 petition, which forms the basis of the instant appeal, against Arabie and American (collectively referred to as “American”) in the OWC. Therein, she asserted numerous claims, but relevant to this appeal are only two. Mrs. Gautreaux sought additional reimbursement for sitter services she provided for her son during the time American ceased paying benefits and for medical bills paid by Medicaid during that time.
|4American filed a motion for a partial summary judgment on the issue of the amount of reimbursement Mrs. Gautreaux was entitled to for the “attendant care services” she provided to her comatose son. For the purpose of the motion, the parties agreed that Mrs. Gautreaux did in fact provide “attendant care services” to Patrick for 1,290 days. It was also undisputed that American paid Mrs. Gautreaux $53,148.00 for those services at a rate of $5.15 per hour, the prevailing minimum wage, for eight hours a day for those 1,290 days.
American contended that Mrs. Gau-treaux had been paid the maximum amount to which she was legally entitled pursuant to the workers’ compensation reimbursement schedule set forth in the Louisiana Administrative Code in Title 40, Part I, Chapter 35 Sections 3507-3511 (2006) (“fee schedule”). American urged that the fee schedule provides for three levels of care: Registered Nurse (R.N.); Licensed Practical Nurse (L.P.N.); and sitter/nonprofessional. In support, American pointed to Section 3507(A)(2)(a), found in the section pertaining to prior authorization requirements, which requires the treating physician to provide a “description of needed nursing or other attendant services, as well as specifying the level of nursing care (R.N., L.P.N., sitter/nonprofessional ... ”). American argued that because it is undisputed that Mrs. Gau-treaux is not a R.N. or L.P.N., holds no certificates or licenses in any medical field, and never had any formal training as a nurse, by default, she fell into the sitter/nonprofessional family member category. Pursuant to the fee schedule, services by nonprofessional family members are *310 reimbursable up to eight hours in any 24-hour period at an hourly rate of minimum wage. La. Admin. Code 40:3509A(5) and 3511C (2006). American also relied on La. R.S. 23:1034.2D, which provides that fees in excess of the reimbursement schedule shall not be recoverable against the employer or compensation insurer, in support of its claim that Mrs. Gautreaux was not entitled to further reimbursement for her services.
|fiIn support of the motion, American introduced Mrs. Gautreaux’s answers to interrogatories and an excerpt from her deposition in which she admitted that she did not possess any certificates or licenses in any medical field or profession, including but not limited to, sitter, nursing assistant, and/or nurse. They also submitted an e-mail correspondence setting forth that Mrs. Gautreaux had been paid $53,148.00 and the rate at which her hourly fee had been computed.
In opposition to the motion, Mrs. Gau-treaux claimed that because her son required 24-hour-a-day care and because she performed nursing services in caring for her comatose son, her rate of compensation should be the same as a nurse rather than a sitter. Mrs. Gautreaux pointed out that American paid her $8.00 an hour for her services prior to its termination of benefits, and then paid her $18.00 per hour after the successful appeal of the termination decision. She acknowledged that the rates American paid her in the past had not been negotiated or “pre-negotiat-ed,” but claimed that the rates paid reflected an admission by American that she was doing nursing services or at least was owed more than minimum wage for the services she was providing. Mrs. Gau-treaux asked the WCJ to enter a reasonable award by splitting the $8.00 fee paid prior to the appeal and the $18.00 fee paid after the appeal, or to choose one or the other in setting the appropriate rate of compensation for her services.
In opposition to the motion, Mrs. Gau-treaux submitted her affidavits, in which she attested that from the date of her son’s injury in 2000, she had been by his side and had been taught by the hospital nursing staff, among other things: how to care for a patient in bed; how to perform physical therapy on her son’s arms, legs, and neck; how to administer medications; how to suction Patrick’s throat; and how to bathe, feed, and lift Patrick. (Gau-treaux A) She further attested that once Patrick came home, she was instructed by numerous providers of equipment, medication, and medical supplies in the use and administration of the supplies or | ^services. According to Mrs. Gautreaux, she had been instructed by nurses and therapists on: how to care for a comatose patient; trach care and breathing treatments; how to pack a central line when it became infected, how to use a suction catheter; and how to care for pressure point wounds on the hands and fingers. Mrs. Gautreaux also attested that she ordered medical supplies according to the list provided by the insurer and Patrick’s treating physicians and received and checked the supplies. In her affidavits, Mrs. Gautreaux described a typical day of caring for Patrick, including, among other things, the administration of medication, performing breathing treatments every six hours around the clock and tube feedings four times a day, taking his blood pressure and checking his oxygen level, and performing trach care. She acknowledged that during the time the case was on appeal, Medicaid provided some sitter services. Mrs. Gautreaux explained that after her son was released from the hospital, sitters and other attendants helped to care for her son, but they would sometimes not come, and she was instructed to write down her time and submit it to the insurer for payment. Af *311 ter the case was overturned on appeal, the nurses and CNA’s who were caring for Patrick did not come 24 hours a day; again, she was instructed to record her time and send it to the compensation insurer for payment.
In further opposition to the motion for summary judgment, Mrs. Gautreaux offered the deposition testimony of Dr. Russell Henry, an internist who treated Patrick following his injury. He acknowledged that Patrick required 24-hour-a-day care with someone in attendance at all times, and once stabilized, would have to be looked at every four hours or so. She also submitted checks written to her by American for attendant home care from May 2, 2001, through December of that year, and from February 18, 2006 through September 2007.
On August 4, 2010, a hearing was held on the motion, and on August 27, 2010, the WCJ rendered judgment granting American’s motion for partial |7summary judgment and dismissing Mrs. Gautreaux’s claim for payment for sitter services provided to her son with prejudice.
Trial proceeded on Mrs. Gautreaux’s remaining claims, limited at the outset of the trial to her claims for penalties and attorney’s fees for American’s allegedly late payment of, among other things, certain indemnity benefits, attorney’s fees and court costs awarded by this court, sitter services, and a Medicaid payment. Following the trial, the WCJ entered judgment finding that the payment for sitter services and costs and attorney’s fees from the final judgment were late and assessing penalties and attorney’s fees on those late payments. The WCJ further found that Mrs. Gautreaux did not have a right to recover penalties or attorney’s fees for American’s late reimbursement to Medicaid of medical expenses paid by Medicaid.
Mrs. Gautreaux filed this appeal, contending that the WCJ erred in limiting her recovery for sitter’s fees to minimum wage, insisting that she should have been awarded $18.00 per hour for her services. She also asserts that the WCJ should have awarded her penalties and attorney’s fees for the late Medicaid payments and that the WCJ erred in failing to assess costs. Lastly, Mrs. Gautreaux seeks an award of attorney’s fees for the work done in connection with this appeal.
ATTENDANT CARE SERVICES
We first review the grant of partial summary judgment rendered in favor of American by the WCJ. An appellate court reviews a decision to grant a motion for summary judgment using the same criteria that govern a trial court’s consideration of whether summary judgment is appropriate. Populis v. Home Depot, Inc., 2007-2449 (La.App. 1st Cir.5/2/08), 991 So.2d 28, 24, writ denied, 2008-1155 (La.9/19/08), 992 So.2d 943. A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material |sfact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The workers’ compensation fee schedule is contained in Chapter 35 of Title 40 of the Louisiana Administrative Code, which sets forth rules regarding nursing/attendant care and home health services. Section 3507 requires prior authorization for all nursing services and personal care services described in the regulations. A physician must describe the “level of nursing care (R.N., L.P.N., sitter/nonprofessional)” and the daily/hourly requirements for each level of nursing care. La. Admin. Code 40:3507A(2)(a) & (b) (2006).
*312 Section 3509 contains training requirements and reimbursement guidelines. It provides that payment may be made for authorized services to the following provider types: “trained professional nursing personnel” who provide services through other entities or who are self-employed; nursing and personal care homes; nursing manpower agencies and home health agencies; family members and other persons who are medical professionals; and family members who are not trained professional nursing personnel if the following requirements have been satisfied: the attendant received adequate instruction from the authorized treating provider regarding the services to be provided in the home; the services are beyond the scope of normal household duties and are in the nature of services ordinarily rendered by trained professional personnel in hospitals and nursing homes; and there is sufficient evidence to identify the nature and approximate value of the services. La. Admin. Code 40:3509A(l)(2)(3)(4)(5)(6)(a)(b) & (c) (2006). American stipulated that Mrs. Gautreaux met all of the requirements to be reimbursed as a nonprofessional family member.
The guidelines further provide categories of services which require different levels of care for proper administration. The first group of services requires “skilled” personnel. The non-exclusive listing includes tracheotomy aspiration. |flLa. Admin. Code 40:3509A(9) (2006). The second group of sexwices is “supportive,” which are not necessarily skilled and may require only a nonprofessional level of care, such as changes of position in bed for a nonam-bulatory patient to avoid the development of ulcers. La. Admin. Code 40:3509A(10) (2006). The third group is activities not considered to be “skilled” nursing services for which a person of lesser training can be utilized, such as administration of routine oral medications, routine services in connection with bladder catheters, skin care, and assisting the patient in routine dressing and eating. La. Admin. Code 40:3509A(11) (2006).
Section 3511 sets forth the maximum allowable reimbursement for nursing/attendant care services for the least of the provider’s usual and customary fee, a pre-negotiated amount between the provider and carrier, or the maximum allowable amounts established by the schedule. The following rates are established in the schedule: (1) registered nurse — $44.00 per hour; (2) licensed practical nurse — $31.00 per hour; (3) nurses’ aide — $11.00 per hour; (4) attendant — minimum wage; and (5) nonprofessional family member — minimum wage. La. Admin. Code 40:3511C (2006).
American argues that the fee schedule clearly sets forth three categories of personnel providing services to an injured employee: (1) RN; (2) LPN; and (3) “sitter/nonprofessional.” It submits that obviously the “trained professional nursing personnel” referred to in Section 3509A(2)(a) are RNs and LPNs because they are the only level of providers that require formal training and licensure. American claims that in order to be reimbursed as a trained nursing professional, Mrs. Gautreaux must be a R.N. or a L.P.N., and insists that simply because she may know how to “aspirate a tracheotomy” does not make her a trained nursing professional. It insists that because it is un-controvered that Mrs. Gautreaux is not a |10R.N. or a L.P.N., by default, she can only fall into the “sitter/nonprofessional” category.
Mrs. Gautreaux contends that the fee schedule simply does not apply to her. She stresses that she performed the work of a registered nurse in caring for her son. She also urges that the clearest expression *313 she did so is the fact that American paid her $18.00 an hour as an independent contractor for her services. Mrs. Gautreaux points out that when American needed her services, they paid her appropriately, but now resorts to “splitting hairs” in the hope of reducing its obligation.
We have reviewed the provisions for nursing/attendant care set forth in Sections 3507-3511 of Chapter 35 and conclude that because it is clear that Mrs. Gautreaux is not a R.N. or a L.P.N., she may not be reimbursed the hourly rate set forth in the reimbursement schedule for those types of nursing professionals. However, the parties have not addressed whether Mrs. Gautreaux can qualify as a “self-employed nurses’ aide,” for which Section 3511C sets forth an $11.00 hourly reimbursement rate. We note that American was paying Mrs. Gautreaux for caring for her son prior to the time that it ceased paying all workers’ compensation benefits. For that reason, she could be considered “self-employed.” The reimbursement schedule does not require that the nurse’s aide be a “certified nurse’s aide” (CNA), nor does it set forth what type of training a person must have in order to qualify for reimbursement as a “nurse’s aide.” We note that Section 3509A(11) refers to a host of activities which are not considered to be “skilled” nursing services that may be performed by a person of “lesser training.” Because Mrs. Gautreaux offered evidence showing that she had been trained by nursing professionals and was in fact performing services which could be considered to be “skilled” services under Section 3509A(9) and services clearly falling under Section 3509A(11), it is possible that she could qualify for reimbursement as a “self-employed nurses’ aide.” We further observe that American stipulated that |n Mrs. Gautreaux met all of the requirements of Section 3509A(6), one of which is that the services provided must be in the nature of services ordinarily rendered by trained professional personnel in hospitals or nursing homes. Since American did not offer evidence foreclosing Mrs. Gautreaux from reimbursement for the “self-employed nurses’ aide” level of attendant care services, we find that the WCJ erred in granting summary judgment finding Mrs. Gau-treaux was only entitled to minimum wage reimbursement under the schedule.
MEDICAID PAYMENT
In her second assignment of error, Mrs. Gautreaux contends that the WCJ erred in concluding that she is not entitled to receive penalties or attorney’s fees associated with the reimbursement to Medicare by-American. According to the record, on April 23, 2010, the Louisiana Department of Health and Hospitals (DHH) received a check from American in the amount of $161,418.02, which DHH acknowledged constituted full reimbursement of the Medicaid lien amount arising from its payment of medical expenses on Patrick’s behalf. On April 26, 2010, DHH advised the parties that it had closed its file on this case.
Mrs. Gautreaux first contends that the WCJ erred in concluding that only Medicaid had a right to recover the medical benefits it paid. She submits that because an injured worker has a right to seek reimbursement of Medicaid benefits paid, she should be entitled to penalties and attorney’s fees on the amount American finally paid to Medicaid on April 23, 2010, some six years after this court ordered that all medical bills be paid.
Mrs. Gautreaux acknowledges that the Louisiana Supreme Court has held that payment of an employee’s medical expenses by Medicaid extinguishes the employee’s claim against the employer for those medical benefits and has indicated that only Medicaid has a right to recover *314 the benefits it has paid, citing Benoit v. Turner Industries Group, L.L.C., 2011-1130 (La.1/24/12), 85 So.3d ||⅞629, but insists that the supreme court misread La. R.S. 23:1212 in reaching that conclusion. Mrs. Gautreaux contends that La. R.S. 23:1212 plainly provides that if Medicaid paid the medical bills, the claim against the employer/insurer is NOT extinguished.
Louisiana Revised Statute 23:1212 provides in part as follows:
A. Except as provided in Subsection B, payment by any person or entity, other than a direct payment by the employee, a relative or friend of the employee, or by Medicaid or other state medical assistance programs of medical expenses that are owed under this Chapter, shall extinguish the claim against the employer or insurer for those medical expenses.
B. Payments by Medicaid or other state medical assistant programs shall not extinguish these claims and any payments made by such entities shall be subject to recovery by the state against the employer or insurer.
In Benoit, the court held that reading the statute as a whole, the payment of medical expenses by Medicaid extinguishes any claim by the employee against the employer for those expenses.. However, the court concluded, paragraph (B) carves out a narrow exception whereby the state is granted a right to recover these expenses from the employer. Benoit, 85 So.3d at 632. Under Benoit, Medicaid’s payment of medical expenses extinguished Mrs. Gau-treaux’s claim against American for those expenses up to the amount paid. Medicaid is the proper party to recover expenses it paid on behalf of Patrick from American. Therefore, we find no merit in Mrs. Gau-treaux’s claim that she has a right to seek payment of the medical expenses paid by Medicaid from American.
Mrs. Gautreaux argues that even if she cannot seek reimbursement of medical expenses paid by Medicare, she still has the right to seek attorney’s fees, penalties, and interest for the untimely payment of those benefits. We disagree. If Mrs. Gau-treaux’s right to recover medical expenses from American was extinguished by the amount of the payments made by Medicaid, and only Medicaid has the right to seek reimbursement of the payments it made on behalf of Patrick 11sfrom American, it follows that. Mrs. Gautreaux has no right of action to recover penalties and attorney’s fees for American’s purportedly untimely reimbursement of those expenses to Medicare. Therefore, we find that the WCJ correctly denied this claim.
COSTS AND ATTORNEY’S FEES
Mrs. Gautreaux contends that the WCJ erred in failing to assess costs to American. The judgment entered by the WCJ is silent on costs. Because Mrs. Gautreaux prevailed on some claims and American prevailed on some claims, we infer that the WCJ intended for each party to bear their own costs. We find no error in the WCJ’s failure to award Mrs. Gautreaux costs.
In her final assignment of error, Mrs. Gautreaux asks for attorney’s fees for the preparation of the appeal. We decline to enter an award of attorney’s fees, as there has been no ruling on the merits that Mrs. Gautreaux is entitled to additional reimbursement for the services she provided to ' her son from American and this court has denied her other claims.
CONCLUSION
For the foregoing reasons, the partial summary judgment rendered in favor of Arabie Brothers Trucking Co. and American Interstate Insurance Company is re *315 versed: In all other respects, the judgment appealed from is affirmed. The case is remanded to the Office of Workers’ Compensation for further proceedings. Costs of this appeal are assessed one-half to appellant, Mary Gautreaux, and one-half to appellees, Arabie Brothers Trucking Co. and American Interstate Insurance Company.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
CRAIN, J., concurs.

. Arabie Brothers Trucking Co. v. Gautreaux, 2003-0120 (La.App. 1st Cir.8/4/04), 880 So.2d 932, writ denied, 2004-2481 (La. 12/10/04), 888 So.2d 846; Arabie Brothers Trucking Co. v. Gautreaux, 2010-1999 (La.App. 1st Cir.6/10/11), 2011 WL 2979977 (unpublished ); and Arabie Brothers Trucking Co. v. Gautreaux, 2012-0849 (La.App. 1st Cir.12/21/12), 111 So.3d 1088, writ denied, 2013-0536 (La.4/26/13), 112 So.3d 844. ,