991 So.2d 28 (2008)
Lee E. JONES
v.
CITY OF BATON ROUGE/PARISH OF EAST BATON ROUGE.
No. 2007 CA 1723.
Court of Appeal of Louisiana, First Circuit.
May 2, 2008.
Lee E. Jones, Baton Rouge, LA, Claimant/Appellant In Proper Person.
E. Wade Shows, Eugene Booth, Gwendolyn K. Brown, Baton Rouge, LA, for Defendant/Appellee City of Baton Rouge/Parish of East Baton Rouge.
Before PARRO, KUHN, and DOWNING, JJ.
KUHN, J.
Claimant-appellant, Lee E. Jones, was injured on June 12, 2001, when a wastewater hose came loose and struck him in the right side of his chest. Defendant-appellee, the City of Baton Rouge/Parish of East Baton Rouge, Department of Public Works ("City/Parish"), stipulated that *29 Jones' injury occurred during the course and scope of his employment. As a result of Jones' injury, the City/Parish paid him workers' compensation benefits, lost time payments, and medical payments in excess of $7,400.00. The City/Parish stopped paying workers' compensation benefits to Jones on December 26, 2001, upon his return to work. Jones filed a disputed claim form for additional workers' compensation benefits allegedly due based on his June 12, 2001 accident. After a November 28, 2006 hearing before the Office of Workers' Compensation ("OWC"), a ruling was signed on December 4, 2006, in favor of the City/Parish and against Jones, dismissing his suit at his cost. The OWC ruling also stated that the City/Parish had paid "all medical and indemnity benefits for which it is responsible because of this June 11, 2001 injury to claimant, and therefore no further medical nor indemnity are due to claimant." Jones has appealed.[1] After a full review of the record before us, we affirm the OWC ruling pursuant to Louisiana Uniform Court of Appeal Rules 2-16.IB.
On the day of Jones' accident, he was examined in the Our Lady of the Lake Regional Medical Center emergency room, where he was diagnosed with a chest contusion and was released to return to full duty work on June 22, 2001. On October 8, 2001, Mr. Jones went to Calais Health, complaining of pain radiating into his right arm, and was referred to Dr. Joe A. Morgan, an orthopedic surgeon. Dr. Morgan examined Jones on October 25, 2001, at which time he noted "soft tissue swelling" in his chest but "no weakness or sensory loss in either upper extremity" and "no reflex change." Dr. Morgan noted that Jones' x-rays revealed "no fractures or dislocations." However, Dr. Morgan sent Jones to have an ultrasound to rule out the possibility of a subcutaneous hematoma in his right chest wall. Upon learning that the October 30, 2001 ultrasound revealed normal "soft tissues" and "no fluid, masses or calcifications," Dr. Morgan discharged Jones to return to "regular duty" work. Following a November 7, 2001 examination, Dr. Morgan noted that Jones' right chest wall had a "large prominence that [was] not particularly tender." Dr. Morgan suspected a lipoma, a fatty tumor, which was not related to the June 12, 2001 accident. Dr. Morgan noted that the previously-performed ultrasound did not show any fluid accumulation in that area. Based on Jones' complaint of soreness, Dr. Morgan sent him to physical therapy three times a week for two weeks, told him to refrain from work, and advised him to return for a recheck in two weeks. Dr. Morgan advised that if Jones was still sore at that time, he would recommend a consultation with a general surgeon about the possibility of removing the lipoma, or mass, in his chest.
Thereafter, Dr. Neil Smith performed a nerve conduction study, which revealed mild right carpal tunnel syndrome and "marked slowing in the ulnar nerve across the wrist and elbow on the right."
On December 27, 2001, Jones returned to work. In a December 28, 2001 letter to the City/Parish, Dr. Morgan stated:
I consider him to be at maximum medical improvement and full recovery following the injury that he sustained on 6-12-01. After December 1, 2001, I do not consider him to be in need of further treatment for injuries that he sustained *30 on 6-12-01. The abnormal nerve conduction studies for the median nerve and the ulnar nerve of the right upper extremity do not have a relationship to the injury of 6-12-01.
At the November 28, 2006 OWC hearing, Jones testified that he never stopped hurting following his June 2001 accident, and after being on the job for a few months, his pain continued. He stopped working on March 8, 2002, and in June 2002, he underwent surgery to have the mass in his chest wall removed. After exhausting his available leave, Jones requested a leave of absence and was granted "leave without pay" from June 28, 2002, to August 23, 2002. He did not return to work, and he was ultimately terminated on October 5, 2002. Thereafter, he filed his disputed claim form seeking additional workers' compensation benefits.
In oral reasons, the OWC stated, in pertinent part:
The [OWC] makes a finding of fact that the injuries alleged by claimant in this case to support continued disability are not related to this case. The only injury that was related to this case was a chest contusion, per the medical records in evidence. Dr. Morgan did not find any other related injury, just the chest contusion. Claimant was properly treated for that injury, was released to work on numerous occasions and benefits were paid during that time period by [the City/Parish] and then were properly terminated after receiving the releases from Dr. Morgan, the treating physician in this case. Benefits were terminated on December 26, 2001. Claimant was discharged by Dr. Morgan. Dr. Morgan continued to try to figure out whether other conditions were related, and he found that they were not related. Claimant actually received more benefits than he was supposed to get. [The City/Parish] was generous in paying benefits beyond the releases to work full duty by paying benefits through December 26, 2001. The City paid all medical benefits related to this case. The [OWC] finds no further indemnity or medical benefits are due in this case. All benefits have been properly paid.
Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 556. In applying this standard of review, the appellate court must determine whether the fact-finder's conclusions are reasonable, not whether the trier of fact was right or wrong. Id. Where there are two permissible views of the evidence, a fact-finder's choice between them can never be manifestly erroneous or clearly wrong. Id. Even where the appellate court is convinced it would have weighed the evidence differently if it had been sitting as trier of fact, the court of appeal may not reverse if the fact-finder's findings are reasonable in light of the record reviewed in its entirety. Id. (quoting Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La. 1990)).
Because we find the OWC's factual conclusions are supported by the record, we find them to be reasonable. Likewise, based on these factual conclusions, we find no error in the OWC's ruling that dismissed Jones' claim for additional workers' compensation benefits. Thus, we hereby affirm the OWC's December 4, 2006 ruling. Appeal costs are assessed against Jones.
AFFIRMED.
NOTES
[1] Jones, who represented himself at the OWC hearing and also now represents himself on appeal, assigned no specific assignments of error, but he adopted into his brief a pre-trial statement, which raised the issue of whether he was entitled to recover additional workers' compensation benefits.