McClendon, j.
12Claimant-appellant, Javon Moses, appeals the judgment of the Office of Workers’ Compensation (OWC) in favor of defendant-appellee, Terrebonne General Medical Center (TGMC), dismissing his claim for workers’ compensation benefits related to his liver failure that allegedly occurred as a result of his employment with TGMC. For the following reasons, we affirm the judgment of the OWC.
FACTS AND PROCEDURAL HISTORY
In May of 2003, Mr. Moses began full-time employment with TGMC. Originally hired as a housekeeping technician, Mr. Moses was promoted to a patient transporter in August of 2004, the position he held until November 10, 2005, when he voluntarily resigned from his employment with TGMC for another job.
As part of his employment with TGMC, Mr. Moses was required to submit to annual tuberculosis screening tests. His initial screening test in 2003 was negative, as was his 2004 screening test. However, in *989 October of 2005, Mr. Moses tested positive for exposure to tuberculosis. As a result, Mr. Moses met with Jeanne Hamner, a TGMC employee, who made an appointment for Mr. Moses with Dr. Ray Cinnater of Internal Medicine Associates of Houma. Mr. Moses was examined by Nancy Warren, a family nurse practitioner, with Internal Medicine Associates of Houma on November 1, 2005, and a nine-month course of daily oral ingestion of isoniazid (INH) medication was prescribed. Thereafter, Mr. Moses’ medical information was forwarded to the Terrebonne Parish Health Unit.
On April 19, 2006, Mr. Moses was seen at the TGMC emergency room with complaints of weakness, abdominal pain, dizziness, and jaundice, and he was diagnosed with chemical-induced hepatitis. At that time, Mr. Moses was instructed to discontinue his INH therapy. Four days later, while attending a wedding in Jackson, Mississippi, Mr. Moses was admitted to St. Dominic-Jackson Memorial Hospital. Once stabilized, Mr. Moses was discharged on April 25, 2006, |3with a diagnosis of acute fulminant liver failure secondary to INH toxicity and was scheduled to see Dr. Fredric Regenstein on April 26, 2006, at Tulane University Hospital & Clinic (Tulane) in New Orleans for further evaluation of a possible liver transplant. Mr. Moses was admitted to Tulane on April 28, 2006, and on May 2, 2006, a liver transplant was performed, which was successful.[1]
On September 29, 2006, Mr. Moses filed a disputed claim for compensation, seeking workers’ compensation benefits and asserting that he suffered from an occupational disease related to his employment at TGMC. The matter came for trial on January 16, 2008, and February 14, 2008. The OWC judge took the matter under advisement, and on May 13, 2008, judgment was rendered and signed in favor of TGMC, dismissing Mr. Moses’ workers’ compensation claim. Thereafter, written reasons for judgment were dictated into the record on October 28, 2008.
Mr. Moses has appealed, asserting that the OWC erred in determining that he did not meet his burden of proving 1) that he suffered an occupational illness as a result of his employment at TGMC, 2) a causal relationship between his liver failure and his employment with TGMC, or 3) a causal connection between TGMC’s yearly tuberculosis screening test and his subsequent liver failure. Thus, according to Mr. Moses, the OWC erred in denying him medical and indemnity compensation benefits.
DISCUSSION
The Workers’ Compensation Act provides coverage to an employee for personal injury by accident arising out of and in the course of his employment. An employee must prove the chain of causation required by the workers’ compensation statutory scheme as adopted by the legislature and must establish that the accident was employment-related, that the accident caused the injury, and that the injury caused the disability. Winborne v. Sanderson Farms, 06-2272, p. 3 (La.App. 1 Cir. 9/14/07), 971 So.2d 342, 344. Initially, a workers’ pcompensation claimant has the burden of establishing by a preponderance of the evidence that an accident occurred on the job and he sustained an injury. Once the employee proves the occurrence of a work-related accident, he or she must next establish proof of a causal connection *990 between the accident and the resulting injury by a preponderance of the evidence. Winbome, 06-2272 at p. 3, 971 So.2d at 344.
Prior to the legislative extension of workers’i compensation coverage to include occupational diseases, a worker’s entitlement to compensation, hinged on the occurrence of an “accident,” which can only be established by the claimant’s proof of an “identifiable precipitous event” that caused injury. While enlarging workers’ compensation coverage to cases of occupational disease, LSA-R.S. 23:1031.1 retains the requirement that an employee establish that the disease arises from his work, 1.e., from “causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease.” ■ LSA-R.S. 23:1031.1 B.[2] Thus, the claimant must show that he contracted the disease at issue during the course of his employment and that the disease was the result of the nature of the work performed. The causal link between a claimant’s illness and his work-related duties must be established by a reasonable probability; the claimant fails in his burden of proof upon a showing of only a possibility that the employment caused the disease or that other causes not related to the employment are just as likely to have caused the disease. Dunaway v. Lakeview Regional Medical Center, 02-2313, p. 5 (La. App. 1 Cir. 8/6/03), 859 So.2d 131, 134-35.
As in other cases, factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. In applying this standard of review, the appellate | ¿court must determine whether the fact-finder’s conclusions are reasonable, not whether the trier of fact was right or wrong. Where there are two permissible views of the evidence, a fact-finder’s choice between them can never be manifestly erroneous or clearly wrong. Even where the appellate court is convinced it would have weighed the evidence differently if it had been sitting as trier of fact, the court of appeal may not reverse if the fact-finder’s findings are reasonable in light of the record reviewed in its entirety. Banks, 96-2840 at pp. 7-8, 696 So.2d at 556; Jones v. City of Baton Rouge/Parish of East Baton Rouge, 07-1723, pp. 4-5 (La.App. 1 Cir. 5/2/08), 991 So.2d 28, 30. On appeal, Mr. Moses argues that the OWC erred in denying his claim for benefits because the Louisiana Public Health Sanitary Code required that he have annual tuberculosis screening tests in order to remain employed at TGMC.[3] Thus, according to Mr. Moses, but for his employment at TGMC, he would not have been screened for exposure to tuberculosis and *991 therefore would not have known that he was exposed to tuberculosis and would not have undergone the INH therapy, which undisputedly resulted in his liver failure. Accordingly, Mr. Moses contends that the occupational illness of liver failure resulting from INH therapy was due to causes and conditions characteristic and peculiar to his employment at TGMC.
It is undisputed herein that Mr. Moses’ liver failed because of INH toxicity. However, TGMC asserts that Mr. Moses failed to establish a causal connection between his liver failure and his employment at TGMC. Further, TGMC asserts that Mr. Moses failed to establish that his liver failure fit within the definition of occupational disease within the meaning of the Workers’ Compensation Act.
| r,The OWC judge noted that although Mr. Moses indicated that he was exposed to the tuberculosis germ while transporting a patient at TGMC, the evidence established that no tuberculosis germs were identified during the course of Mr. Moses’ employment at TGMC. Dr. Mary Eschete, TGMC’s expert in internal medicine and infectious disease, testified that a worker at TGMC in 2005 who converted from a negative skin test to a positive tuberculosis screening test was just as likely to be exposed to the germ outside of the work environment as at the hospital. Dr. Es-chete stated that, in Terrebonne Parish, statistics show that it is just as likely to be exposed to latent tuberculosis in the public as in a hospital.[4] Joey Hebert, a tuberculosis program manager with the Louisiana Office of Public Health in charge of seven southern parishes, testified that there were no reports of active tuberculosis in 2004 or 2005 at TGMC. Thus, it was also Mr. Hebert’s opinion that it was just as likely that Mr. Moses came into contact with the tuberculosis germ out in the public as it would have been in the hospital. Lauren Melancon, the infection control manager at TGMC, testified that from October 2004 through December 2005, there were no positive cultures for tuberculosis at TGMC. Kristi Olivier, a microbiology supervisor at TGMC, additionally testified that there were no reported cases of patients at TGMC with active tuberculosis from October 2004 through October 2005. Accordingly, the OWC judge determined that Mr. Moses failed to prove that he contracted tuberculosis, latent tuberculosis, or a work-related occupational disease during his employment at TGMC.
The OWC judge also noted that although Mr. Moses stated that he was never given the option not to take the INH medication, Mr. Moses took the INH medicine for only nine days while he was employed at TGMC. He went to see Ms. Warren on November 1, 2005, was given a prescription, and began his INH therapy on November 2, 2005. Mr. Moses voluntarily left his job at TGMC on November 10, 2005, for a better paying job. Thus, once Mr. Moses was no 17longer employed with TGMC, his job was no longer contingent on taking the INH medication. In fact, Mr. Moses turned in his letter of resignation on October 27, 2005, before he ever took his first dose of the INH medication. Thus, the OWC judge concluded that Mr. Moses voluntarily chose to continue the INH therapy.
Further, the OWC judge determined that Mr. Moses failed to prove that his required skin testing as an employee at TGMC lead to his subsequent liver failure. Hence, the OWC judge concluded that Mr. *992 Moses failed to meet his burden of proving that he developed a work-related occupational disease during his employment with TGMC.
After a thorough review of the record and the evidence presented in this matter, we are unable to say that the OWC judge was manifestly erroneous in her factual findings. Because we find the OWC judge’s factual findings are supported by the record, we find them to be reasonable. Likewise, based on these factual findings, we find no error in the OWC judge’s ruling that dismissed Mr. Moses’ claim for workers’ compensation benefits. Thus, we hereby affirm the OWC’s judgment of May 13, 2008. The costs of this appeal are assessed to Mr. Moses.
AFFIRMED.

. Mr. Moses suffered organ rejection complications in July of 2007, which were ultimately resolved.

. Louisiana Revised Statutes 23:1031.1 B provides, in pertinent part:
An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease.

. Section 503B of the Sanitary Code provides:
Any employee or volunteer at any medical or 24-hour residential facility requiring licensing by the Department of Health and Hospitals who has a positive purified protein derivative skin test for tuberculosis, five tuberculin unit strength, given by the Man-toux method, or a chest X-ray other than normal, in order to remain employed or continue work as a volunteer, shall complete an adequate course of chemotherapy for tuberculosis as prescribed by a Louisiana licensed physician, or shall present a signed statement from a Louisiana licensed physician stating that chemotherapy is not indicated.

. When given information that in 2007 Mr. Moses’ father had tested positive for exposure to tuberculosis, Dr. Eschete confirmed her position that exposure was more likely to have occurred outside of the hospital.